**UNITED STATES of America**

v.

**Wilfredo Felix AYALA, Appellant.**

**No. 88–3180.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 17, 1989.

Decided Jan. 12, 1990.

**426**

W. Edward Morgan, Washington, D.C., for appellant.

Karen E. Rhew, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and Elizabeth Trosman, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before EDWARDS, BUCKLEY and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This case requires us to examine the question of whether a federal criminal defendant can obtain postconviction relief pursuant to the common law writ of *audita querela*. Appellant, Wilfredo Ayala, a Peruvian national, was sentenced in 1987 to two years in prison for conspiracy to distribute cocaine and is currently on parole. During Ayala's imprisonment, the Immigration and Naturalization Service ("INS") initiated deportation proceedings against

him based on his drug conviction. Arguing that the prospect of deportation made the continuing effect of his conviction inequitable, Ayala subsequently moved to vacate the conviction by a writ of *audita querela*. The District Court denied the motion on the ground that Ayala could collaterally attack his conviction only through a motion under 28 U.S.C. § 2255 (1982). *See United States v. Ayala*, Crim. No. 87–11 (D.D.C. Oct. 27, 1988), *reprinted in* Appendix ("A.") 46.

We agree that a defendant in Ayala's position may not rely on the writ of *audita querela* to challenge his conviction, and consequently we affirm. The only circumstance, if any, in which the writ could furnish a basis for vacating a criminal conviction would be if the defendant raised a legal objection not cognizable under the existing scheme of federal postconviction remedies. Ayala, by his own admission, does not present such an objection on appeal. We remand the case, however, so that Ayala may pursue whatever relief might be available to him under section 2255.

### I. BACKGROUND

In January of 1987, Ayala was charged with distributing 500 grams of cocaine and with conspiracy to distribute the same quantity of that drug. *See* Record Documents Nos. 2, 3. Pursuant to a plea bargain, Ayala pleaded guilty to the conspiracy charge in exchange for the recommended dismissal of the substantive charge. The District Court sentenced Ayala to two years' imprisonment and a four-year term of special parole. *See* Record Document No. 14. Ayala served approximately 16 months in prison before being released on the basis of statutory good-time deductions.

During Ayala's imprisonment, the INS initiated deportation proceedings against Ayala, who entered the United States in 1982 on a business and tourism visa. *See* Points and Authorities in Support of Motion for Writ of Audita Querela ("Motion")

¶ 3, *reprinted in* A. 38–39.[1] Although the record contains no information on these proceedings beyond what Ayala alleges in his pleadings below, it appears that the INS' "show cause" order was based on 8 U.S.C. § 1251(a)(11) (1988), which provides for deportation "upon the order of the Attorney General" of any alien who "has been convicted of a violation of, or a conspiracy to violate, any law or regulation of ... the United States ... relating to a controlled substance." *See* Motion ¶ 4, *reprinted in* A. 39.

Ayala subsequently filed a motion with Judge Johnson, the same judge who initially sentenced him, to vacate his conviction pursuant to the writ of *audita querela.* The theory of the motion was that the prospect of deportation made the continuing effect of the conviction unfair. *See* Motion ¶¶ 7–8, *reprinted in* A. 41–43. In support of this contention, Ayala alleged in his motion that he had furnished and was continuing to furnish assistance to the Government in its efforts to prosecute other drug defendants, that deportation would cause undue suffering to him and to an American woman with whom he was engaged in a loving relationship, and that outside his one-time involvement with drugs he had lived and planned to live within the confines of the law. *See id.* ¶¶ 5, 7–9, *reprinted in* A. 40–44.

The District Court denied Ayala's motion. *See United States v. Ayala,* Crim. No. 87–11 (D.D.C. Oct. 27, 1988), *reprinted in* A. 46. Judge Johnson relied primarily on *United States v. Kimberlin,* 675 F.2d 866 (7th Cir.), *cert. denied,* 456 U.S. 964, 102 S.Ct. 2044, 72 L.Ed.2d 489 (1982), in which the Seventh Circuit held that *audita querela* could not be invoked by a defendant who could otherwise challenge his conviction through a collateral proceeding under section 2255. "Similarly, in the in-

stant case," Judge Johnson concluded, *"audita querela* is not available to the defendant to challenge the validity of his criminal conviction." Slip op. at 2, *reprinted in* A. 47. This appeal ensued.

## II. ANALYSIS

The common law writ of *audita querela* permitted a defendant to obtain "relief against a judgment or execution because of some defense or discharge arising subsequent to the rendition of the judgment." 11 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2867, at 235 (1973). Although historically *audita querela* existed as a remedy primarily for judgment debtors, *see id.,* it apparently has been recognized as a remedy for criminal defendants in at least some state jurisdictions. *See, e.g., Balsley v. Commonwealth,* 428 S.W.2d 614, 616 (Ky.1967). *But see People v. Wilmot,* 254 Ill. 554, 98 N.E. 973, 975 (1912) (writ is solely civil remedy). In federal *civil* practice, *audita querela* has been expressly superseded by Rule 60(b).[2] At least under the circumstances presented by this appeal, we hold that *audita querela* has been similarly superseded in federal *criminal* practice by 28 U.S.C. § 2255 and the writ of *coram nobis,* the conventional postconviction remedies available to federal criminal defendants.

The authority of federal courts to recognize common law postconviction remedies is governed by the Supreme Court's decision in *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954). In *Morgan,* a defendant facing an enhanced sentence under state law because of a prior federal conviction moved to vacate the federal conviction on Sixth Amendment grounds. The Court held that the All Writs Act, 28 U.S.C. § 1651(a) (1982),[3] au-

---

**1.** Ayala alleged in his motion that a detainer was lodged against him and that he posted a $10,000 bond so that he could remain free pending the outcome of the deportation proceedings. *See id.*

**2.** Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judg-

ment shall be by motion as prescribed in these rules or by an independent action.
FED.R.CIV.P. 60(b).

**3.** The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
*Id.*

thorized the district court to entertain this motion pursuant to the common law writ of *coram nobis,* which permits a defendant collaterally to attack his conviction even when he is no longer in custody. *See* 346 U.S. at 506–10, 74 S.Ct. at 249–52. The Court rejected the contention that 28 U.S.C. § 2255, which affords collateral relief to federal prisoners, furnishes the exclusive federal postconviction remedy. *See* 346 U.S. at 510–11, 74 S.Ct. at 252.[4] The teaching of *Morgan* is that federal courts may properly fill the interstices of the federal postconviction remedial framework through remedies available at common law.

The one circuit court of appeals to address the question expressed skepticism on whether a niche exists for *audita querela* within the scheme of federal postconviction remedies. *See United States v. Kimberlin,* 675 F.2d 866 (7th Cir.), *cert. denied,* 456 U.S. 964, 102 S.Ct. 2044, 72 L.Ed.2d 489 (1982). In *Kimberlin,* the district court denied the defendant's motion for a writ of *audita querela,* which the defendant had filed after another district court judge denied the defendant's section 2255 motion attacking the lawfulness of his sentence. The Seventh Circuit affirmed. Drawing on *Morgan,* the court "assume[d]" that relief could be afforded under *audita querela* "if a criminal defendant could show that [such] relief ... was necessary to plug a gap in the system of federal postconviction remedies." *Id.* at 869. Nonetheless, the court expressed "doubt ... that such a gap exists, given the availability of section 2255 for defendants in federal custody and *coram nobis* for defendants no longer in federal custody." *Id.* In any case, the court

concluded, the writ of *audita querela* cannot be invoked "simply to enable a defendant to file a section 2255 motion without complying with the rules governing such motions—which is the use that [the defendant in this case] is trying to make of it." *Id.*

■ Several district courts, however, *have* purported to find "gaps" in the federal postconviction remedial structure susceptible of being filled by the writ of *audita querela. See United States v. Acholonu,* 717 F.Supp. 709, 710 (D.Nev.1989); *United States v. Ghebreziabher,* 701 F.Supp. 115, 116–17 (E.D.La.1988); *United States v. Salgado,* 692 F.Supp. 1265, 1269 (E.D. Wash.1988). In *Salgado,* the court relied on *audita querela* to vacate the defendant's twenty-four-year-old tax-evasion conviction, the existence of which barred the defendant from invoking the amnesty rights of the Immigration Reform and Control Act, 8 U.S.C. § 1255a (1988) ("IRCA"), as a defense to pending deportation proceedings. *See* 692 F.Supp. at 1269–70. Similarly, the court in *Ghebreziabher* granted the defendant's motion to vacate one of three food-stamp fraud convictions so that the defendant would be eligible for amnesty under IRCA. *See* 701 F.Supp. at 116–17. In both cases, the courts held that *audita querela* was available not to address a *legal defect* in a defendant's conviction—a matter cognizable only in a section 2255 or *coram nobis* proceeding—but rather to relieve the defendant of the *inequitable consequences* of the judgment in his case. *See id.* at 116–17; *Salgado,* 692 F.Supp. at 1267–69.[5]

---

**4.** The Court also rejected the suggestion that *coram nobis* relief was foreclosed by Rule 60(b). This provision's express abolition of the writ of *coram nobis,* the Court held, is limited to civil proceedings. *See id.* 346 U.S. at 505 n. 4, 74 S.Ct. at 249 n. 4. This holding similarly disposes of any argument that Rule 60(b) abolishes *audita querela* in criminal proceedings. *See United States v. Kimberlin,* 675 F.2d 866, 869 (7th Cir.), *cert. denied,* 456 U.S. 964, 102 S.Ct. 2044, 72 L.Ed.2d 489 (1982).

**5.** The court in *Acholonu* recognized the availability of *audita querela* in federal criminal proceedings generally but held that it furnished no

ground for vacating the defendant's conviction in that case. *See* 717 F.Supp. at 710. The court ruled that the defendant—an alien seeking to vacate his conviction so that he would be eligible for amnesty under IRCA—had failed to show a subsequently arising "defense or discharge." *See id.* Moreover, assuming without deciding that *audita querela* could be invoked purely on equity or fairness grounds, the court held that the defendant had failed to demonstrate that his interest in being relieved from the effects of his conviction outweighed the Government's interest in preserving the conviction. *See id.* at 710–11.

Although Ayala clearly framed his motion with this theory in mind, we believe that the District Court properly declined to afford Ayala relief on this ground. The *Salgado* and *Ghebreziabher* courts appear mistaken, as a historical matter, in their conclusion that *audita querela* furnishes a purely "equitable" basis for relief independent of any legal defect in the underlying judgment. Commentators and jurists since the time of Blackstone have emphasized the need to show a postjudgment contingency supplying a "matter of discharge" or "defense." 3 W. BLACKSTONE, COMMENTARIES *405–06.[6] Usage in state criminal practice, too, suggests that the distinction between *audita querela* and other forms of postconviction relief lies not in the *character* of the grounds for voiding the judgment, but rather in the *timing* of the occurrence of these grounds. *See, e.g., Balsley v. Commonwealth,* 428 S.W.2d 614, 616 (Ky.1967) (noting that "technical distinction" between *coram nobis* and *audita querela* is that the latter permits attack "of a judgment which *when rendered* was just and unimpeachable" (emphasis added)); *Keith v. State,* 121 Fla. 432, 163 So. 884, 885 n. * (1935) ("'Audita querela' is ... issuable wherever *matters of avoidance* arise *subsequent to the rendition of a judgment....*" (emphasis added)). But because under modern federal practice, a defendant may, under appropriate circumstances, rely on a postjudgment contingency to attack the lawfulness of his conviction in a section 2255 or a *coram nobis* proceeding, *see, e.g., Davis v. United*

*States,* 417 U.S. 333, 342, 94 S.Ct. 2298, 2303, 41 L.Ed.2d 109 (1974),[7] the traditional writ of *audita querela* adds nothing to these two forms of relief.[8]

We recognize that the "pure equity" variant of *audita querela,* endorsed in *Salgado* and *Ghebreziabher,* purports to add a new remedy in the federal postconviction remedial scheme. However, we do not believe that the "gap filling" allowed by *Morgan* permits a court to *redefine* a common law writ in order to create relief not otherwise available in the federal postconviction remedial scheme. *See* note 8 *supra.* In short, because the so-called "pure equity" variant of *audita querela* finds no support in the historical definition of the writ, the authority of federal courts to use it as a "gap filler" under the All Writs Act is open to serious doubt.

 Given the posture of this case, however, we need not definitively resolve the issue of whether the writ of *audita querela ever* supplies a basis for vacating a federal criminal conviction. At oral argument before this court—perhaps sensing the infirmities of the "pure equity" conception of *audita querela*—the appellant abandoned the equitable claims that had been presented to the District Court. He now puts sole reliance on the contention, raised for the first time on appeal, that the Government assured him that he would not be deported if he pleaded guilty and testified against other drug defendants. Ayala maintains that the Government's failure to deliver on this promise, renders his plea involuntary under the due process clause,

---

**6.** *See also Humphreys v. Leggett,* 50 U.S. (9 How.) 297, 314, 13 L.Ed. 145 (1850) ("He is, therefore, in the same condition as if *the defence* had arisen after judgment, which would entitle him to relief by *audita querela....*" (emphasis added)); BLACK'S LAW DICTIONARY 120 (5th ed. 1979) ("some matter of defense or discharge"); 11 C. WRIGHT & A. MILLER, *supra,* § 2867, at 235 (same); Leff, *The Leff Dictionary of Law: A Fragment,* 94 YALE L.J. 1855, 2101 (1985) ("[A] writ issued to afford a remedy to a defendant against whom judgment had been rendered, *but who had a new matter in defense* (e.g., *a release*) arising, or at least raisable for the first time, after judgment." (emphasis added)).

**7.** *Coram nobis* is recognized as providing relief parallel in scope to that provided by section

2255. *See* 3 W. LaFAVE & J. ISRAEL, CRIMINAL PROCEDURE § 27.10(c), at 404 (1984).

**8.** To be sure, not *all* postjudgment changes in law may be raised in a section 2255 proceeding. *See Teague v. Lane,* — U.S. ——, 109 S.Ct. 1060, 1075–77, 103 L.Ed.2d 334 (1989) (plurality). But we have little doubt that a defendant challenging his conviction collaterally may not style his motion as a petition for a writ of *audita querela* simply to evade the Supreme Court's painstakingly formulated "retroactivity" rules. *Cf. Kimberlin,* 675 F.2d at 869 (*audita querela* "cannot lie simply to enable a defendant to [avoid] ... complying with the rules governing [section 2255] motions").

and makes his deportation additional criminal punishment under the double jeopardy clause. Both of these claims are clearly cognizable in a section 2255 proceeding.[9] Consequently, like the Seventh Circuit in *Kimberlin*, we are constrained to affirm the District Court's ruling that Ayala's only proper remedy is a motion under section 2255.[10]

Moreover, because Ayala did not present his constitutional arguments below, we are not now in a position to address these claims *as if* they had been properly raised by a section 2255 motion. At oral argument, Ayala indicated that he would be satisfied with a remand so that he could pursue his due process and double jeopardy claims under section 2255. Because the Government indicated that it had no objection to such a disposition, and because we see no point in obliging Ayala simply to refile his motion with a different caption, we will remand with instructions to the District Court to treat Ayala's original motion, subject to appropriate amendments, as having been filed under section 2255. We express no view, of course, on the merits of Ayala's constitutional claims.[11]

### III. CONCLUSION

The Supreme Court's decision in *United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), makes clear that a federal court can vacate a criminal conviction pursuant to the common law writ of *audita querela* only if the writ permits a defendant to raise a legal objection not cognizable under existing federal postconviction remedies. Because Ayala attacks his conviction on grounds that could properly be raised in a section 2255 proceeding,

we affirm the District Court's decision denying his motion. We remand the case, however, with instructions to permit Ayala to pursue whatever relief might be available to him under section 2255.

*It is so ordered.*

---

**9.** Because he is currently on parole, Ayala remains in federal "custody" for purposes of section 2255. *See Jones v. Cunningham*, 371 U.S. 236, 241–43, 83 S.Ct. 373, 376–77, 9 L.Ed.2d 285 (1963).

**10.** Such a disposition is consistent with the procedures governing section 2255 proceedings because Ayala filed his motion for *audita querela* with the same District Court judge, Judge Johnson, who initially sentenced him, and because Ayala has not previously sought relief from Judge Johnson pursuant to section 2255. *See* 28

U.S.C. § 2255; RULES GOVERNING SECTION 2255 PROCEEDINGS 4(a). Ayala is differently situated in both respects from the defendant in *Kimberlin*. *See* 675 F.2d at 868–69.

**11.** We also express no view on whether the District Court may entertain any double jeopardy challenge by Ayala before the INS issues a final deportation order. *See generally Rafeedie v. INS*, 880 F.2d 506, 525–29 (Ruth B. Ginsburg, J., concurring) (discussing "exhaustion" requirement of 8 U.S.C. § 1105a(c) (1988)).