**UNITED STATES of America, Plaintiff,**

**v.**

**Ramon GARCIA–HERNANDEZ, Defendant.**

**No. 90–30003.**

United States District Court, C.D. Illinois, Springfield Division.

Jan. 30, 1991.

Robert J. Eggers, Asst. U.S. Atty., Springfield, Ill., for plaintiff.

Jay Elmore, Springfield, Ill., for defendant.

OPINION

RICHARD MILLS, District Judge:

Petition for writ of *audita querela.*

As uncommon as it is, *audita querela* is a common law writ allowing a judgment defendant to obtain relief from the consequences of the judgment based on a defense or discharge arising after the rendition of judgment that cannot otherwise be raised. *See Black's Law Dictionary* 131 (6th ed. 1990).

Petitioner pled guilty to having transported an illegal alien on February 3, 1990, in violation of 8 U.S.C. § 1324(a)(1)(B). He was sentenced to five years probation.

Subsequently, Petitioner filed this petition seeking relief from his felony conviction so that he may be eligible for amnesty under the Immigration Reform and Control Act of 1986 (IRCA).[1] Petitioner represents that but for his felony conviction, he would be eligible for legalization.[2] He further

---

**1.** Although Petitioner's pleadings state that he sought amnesty under 8 U.S.C. § 1255(a) ("Adjustment of status of nonimmigrant inspected and admitted or paroled into United States"), it appears that Petitioner actually applied for amnesty under 8 U.S.C. § 1160 ("Special agricultural workers"). The analysis of whether a writ of *audita querela* should issue to enable a petitioner to qualify for amnesty under IRCA is the same regardless of whether amnesty is sought under § 1160 or § 1255(a).

**2.** The Government has filed a response to Defendant's motion which includes affidavits of two INS investigators who represent that they were told by INS officials that Defendant's amnesty application was turned down for reasons *other than* his conviction in this case. By stat-

contends that his felony conviction has produced "disproportionate and inequitable consequences."

The appropriateness of using the common law writ of *audita querela* to relieve the consequences of a criminal conviction was first addressed in *United States v. Kimberlin*, 675 F.2d 866 (7th Cir.1982). In that case, the Seventh Circuit stated:

> The writ of *audita querela* is an old common law procedure for obtaining relief from a judgment. Rule 60(b) of the Federal Rules of Civil Procedure, in creating a procedure for relief from a final judgment in a federal civil case, expressly abolished the writ of *audita querela*, but we cannot conclude from this that the writ is unavailable in a federal criminal case. *Morgan v. United States*, [346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954)], held that the abolition by Rule 60(b) of *coram nobis* was limited to civil proceedings; and we assume the same result would be reached if a criminal defendant could show that relief from a judgment by means of *audita querela* was necessary to plug a gap in the system of federal post conviction remedies. We own to some doubt, however, that such a gap exists, given the availability of section 2255 for defendants in federal custody and *coram nobis* for defendants no longer in federal custody. Moreover, even if there were such a gap, it is very doubtful that *audita querela* would be the means to fill it. Our research has failed to discover any criminal case in which this writ has ever been asked for, let alone issued; it appears to be primarily a remedy of judgment debtors.

*Kimberlin*, 675 F.2d at 869 (citation omitted). *Kimberlin* is not only the first opinion to address the applicability of the writ of *audita querela* to criminal cases, it is the last time the issue has been addressed in a published decision in the Seventh Circuit.

Petitioner supports his petition with district court cases decided outside of the Seventh Circuit subsequent to *Kimberlin*. All of these cases involve the vacation of valid criminal convictions in order to allow the petitioners to qualify for naturalization under the amnesty provision of IRCA.

*United States v. Salgado*, 692 F.Supp. 1265 (E.D.Wash.1988) was the first case to grant relief from a criminal judgment under *audita querela*. Salgado had entered the country lawfully in 1943 as a seasonal worker. In subsequent years he regularly returned to this country during harvest season. He married a United States citizen in 1947 and became a permanent resident the following year, but never applied for naturalization. In 1964, Salgado pled guilty to failing to pay the transfer tax on a small quantity of marijuana, served eighteen months, and was ordered deported. He was told by prison authorities that he could not re-enter the country for two years.

Salgado self-deported and re-entered the country in 1964 using the green card which had never been taken from him.[3] During the next fifteen years, he worked for a California rancher and was inspected by various INS agents, and took vacations to Mexico and re-entered this country without incident.

In 1984, Salgado applied for social security benefits. A routine investigation revealed that he had been deported and that the INS considered him to be in the country illegally. Salgado and his wife then visited Mexico. While there, Salgado contacted the United States' Embassy to seek clarification of his status and was told that his green card was valid and he was a lawful permanent resident. In the meantime, Salgado's wife filed an I–130 petition for immediate relative status on his behalf. The normal investigation performed before granting such status revealed that he was in the country illegally and led to his arrest

---

ute, only Defendant or his representative may be told the reason why his application was denied.

**3.** The *Salgado* court implies that the government was remiss in not confiscating Salgado's

green card. However, the court does not discuss whether this card was physically obtainable. It could, for example, have been in another person's possession while he was in jail and undergoing deportation hearings.

and to deportation proceedings against him.

The court found that although no single factor in the case warranted the relief sought,

> under the totality of the circumstances, it would be a gross injustice to allow this man, who has ... been a model resident for forty-five years save for a single period of unlawful conduct, to effectively serve a life sentence, and for his family to be deprived of benefits from a fund he has paid into throughout his working life.

*Salgado*, 692 F.Supp. at 1268. The court went on to determine that relief was not available under Fed.R.Civ.P. 60(b) because that rule applies only to civil cases; relief was unavailable under *coram nobis* because there was no new evidence or theory to serve as a defense to his conviction.

The court then considered whether *audita querela* applied to the situation where refusal to grant relief would deny him the benefit of a newly created right (the amnesty provisions) to which he would otherwise be entitled. It found only one published decision that "lends credence to that supposition." And that decision was *United States v. Kimberlin* !!⁴ Except for his 1964 conviction, Salgado met the requirements for the newly created right to amnesty.

In granting Salgado relief under *audita querela,* the court indicated that "When ... all counsel and the court can unanimously agree on the equities, and on the right result, it is a fairly safe wager that justice would be served by reaching that result." *Salgado*, 692 F.Supp. at 1271. Salgado's conviction was therefore vacated.⁵

Relief from a criminal conviction by means of a writ of *audita querela* was next allowed in *United States v. Ghebreziabher*, 701 F.Supp. 115 (E.D.La.1988). The petitioner in that case had pled guilty in 1987 to three misdemeanor counts of food stamp trafficking. His application for amnesty under IRCA was subsequently denied because he had three misdemeanor convictions. The court discussed the granting of *audita querela* relief in a similar situation in *Salgado,* and based on the determination that "[c]onviction of two counts with the same sentence would serve the interests of justice and not in any way prejudice the United States" used a writ of *audita querela* to vacate petitioner's guilty plea to count 1 of the indictment. *Ghebreziabher*, 701 F.Supp. at 117.

In *United States v. Grajeda–Perez,* 727 F.Supp. 1374 (E.D.Wash.1989), the petitioner also sought relief from a criminal conviction by means of a writ of *audita querela.* Petitioner was adjudged guilty on July 8, 1988, of being an alien in possession of a firearm in violation of 18 U.S.C. § 922(g). He had served the imposed term of imprisonment and sought to have his conviction set aside in order to be eligible for naturalization under IRCA. The court held that a writ of *coram nobis* was inappropriate because petitioner was not contesting the validity of his conviction. A writ of *audita querela* was considered inappropriate since petitioner was seeking relief not from the consequences of the judgment, but vacation of the judgment itself. The court, however, found that the All Writs Act, 28 U.S.C. § 1651(a), gave the courts "wide latitude to construct any remedy necessary" to do justice. The court then issued a "writ for relief from judgment" vacating petitioner's conviction.

---

**4.** The *Salgado* court quoted from the same section of *Kimberlin* that is provided earlier in this opinion; the quote in *Salgado* ends, however, immediately before the sentence "We own to some doubt...."

**5.** Even if this Court agreed with the reasoning of *Salgado*, it does not automatically follow that the writ of *audita querela* should be granted in this case. In *Salgado,* the writ of *audita querela* was issued to vacate a 1964 conviction that made Salgado ineligible for the "newly created"

right of amnesty under the Immigration Reform and Control Act of 1986. The *Salgado* court felt that the newly created rights under IRCA could be considered "some matter of defense or discharge arising since [the rendition of judgment] which could not be taken advantage of otherwise." *Salgado,* 692 F.Supp. at 1269 (quoting *Black's Law Dictionary* (5th ed.)). In this case, the offense was committed well after the amnesty provision went into effect.

This Court must disagree with *United States v. Salgado*, 692 F.Supp. 1265 (E.D. Wash.1988), *United States v. Ghebreziabher*, 701 F.Supp. 115 (E.D.La.1988), and *United States v. Grajeda–Perez*, 727 F.Supp. 1374 (E.D.Wash.1989).

*Salgado* is founded on a highly questionable interpretation of *United States v. Kimberlin*, 675 F.2d 866 (7th Cir.1982). *Kimberlin* indicates only that Fed.R.Civ.P. 60(b) does not necessarily eliminate the availability of writs of *audita querela* in criminal cases, although the court was unaware of any case in which such relief had been sought or granted in a criminal case. The *Kimberlin* court suggested such relief might be appropriate if there was a gap in the existing post-conviction remedies, which the court doubted. The court further stated that "even if there were such a gap, it is very doubtful that *audita querela* would be the means to fill it." *Kimberlin*, 675 F.2d at 869.

The "gap" in the available post-conviction remedies that *Salgado, Ghebreziabher* and *Grajeda–Perez* have all addressed is the court's lack of a means to "remedy" a totally valid conviction (i.e., a conviction that is in no way legally defective) when the court dislikes the collateral effect of the conviction under IRCA. The only possible inequity in these cases is the harsh consequences criminal convictions have under laws passed by Congress.

We do not believe *Kimberlin* intended to leave open the writ of *audita querela* as a means for the courts to circumvent the application of laws they considered inequitable. Rather, we agree with the statement of United States Court of Appeals for the District of Columbia—the only other Circuit Court to have addressed this issue—and we hold that "The only circumstance, if any, in which the writ [of *audita querela* ] could furnish a basis for vacating a criminal conviction would be if the defendant raised a *legal* objection not cognizable under the existing scheme of postconviction remedies." *United States v. Ayala*, 894 F.2d 425, 426 (D.C.Cir.1990) (emphasis ours).

*Ergo,* Petitioner's petition for a writ of *audita querela* is DENIED.