UNITED STATES, Appellee,

v.

Ewart Mark HOLDER,
Defendant, Appellant.

No. 90–1852.

United States Court of Appeals,
First Circuit.

Submitted March 19, 1991.

Decided June 10, 1991.

Ewart Mark Holder, on brief, pro se.

Daniel F. Lopez Romo, U.S. Atty., and Carlos A. Perez, Asst. U.S. Atty., on brief, for appellee.

Before BREYER, Chief Judge,
CAMPBELL and CYR, Circuit Judges.

PER CURIAM.

The appellant, Ewart Mark Holder, a citizen of Guyana, pled guilty in 1974, in the District Court of Puerto Rico, to importing 5.45 pounds of marijuana into the customs territory of the United States. 21 U.S.C. § 952(a). Imposition of sentence was "withheld" [1] and appellant was placed on probation for a period of five years.

In May 1990, appellant filed in that court a petition for "writ of *audita querela,* writ of error *coram nobis,* or, relief from judgement [sic] 28 U.S.C. § 1651(a)." The district court initially believed that it lacked venue because appellant was residing in the Virgin Islands and so transferred the petition to the District Court for the District of the Virgin Islands. The District Court for the District of the Virgin Islands determined, however, that it lacked jurisdiction and so dismissed the matter.[2] Ap-

---

1. We assume this to mean that the imposition of sentence was suspended.

2. The order of dismissal does not explain the basis for the determination of lack of jurisdiction. We assume that that court concluded that this petition seeking to vacate appellant's conviction must be brought in the court in which the conviction occurred. This is the basis for the ultimate conclusion of the District Court for the District of Puerto Rico that it, indeed, had jurisdiction.

Insofar as appellant complains about the hearing held in the District Court for the District of the Virgin Islands, that matter is not properly before us and we undertake no review of it.

pellant then moved to reopen the petition in the District Court of Puerto Rico. The district court took jurisdiction and denied the petition on its merits. *United States v. Holder*, 741 F.Supp. 27 (D.P.R.1990).[3] Appellant has appealed. We affirm.

Appellant would like to obtain permanent resident status in the United States. He is unable to do so, however, because of his 1974 conviction. 8 U.S.C. § 1182(a)(23) (any alien who has been convicted of a violation of a controlled substance law is ineligible to receive a visa and is excluded from admission into the United States). Apparently, this exclusion would not apply to appellant if his conviction is vacated. And, that is what appellant is seeking by way of his petition.[4]

*Audita querela* is "[t]he name of a common law writ constituting the initial process in an action brought by a judgment defendant to obtain relief against the consequences of the judgment on account of some matter of defense or discharge arising since its rendition and which could not be taken advantage of otherwise." Black's

Law Dictionary 120 (5th ed. 1979). This writ was expressly abolished by amendments to Fed.R.Civ.P. 60(b), effective in 1948.[5] We will assume without deciding, however, on the basis of *United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), which held that the writ of *coram nobis* was still available in criminal proceedings, that the writ of *audita querela* may still be available in appropriate circumstances in criminal proceedings notwithstanding the language of Rule 60(b). *See e.g. United States v. Ayala*, 894 F.2d 425, 428 n. 4 (D.C.Cir.1990); *United States v. Kimberlin*, 675 F.2d 866, 869 (7th Cir.1982); *United States v. Acholonu*, 717 F.Supp. 709, 710 (D.Nev.1989). We emphasize that nothing herein is meant to suggest our affirmative resolution of the difficult question of the survival and availability of this ancient and some might think outmoded writ.

Assuming *arguendo* the writ's availability in a criminal setting, we still must resolve its scope, and the Supreme Court,

**3.** Although appellant's petition sought relief, alternatively, via a writ of *audita querela, coram nobis*, or generally under the all writs provision of 28 U.S.C. § 1651(a), the district court addressed only the propriety of relief via a writ of *audita querela. United States v. Holder*, 741 F.Supp. 27 (D.P.R.1990). On appeal, appellant argues that the district court erred in denying the writ of *audita querela* and raises no argument with respect to either the writ of error *coram nobis* or the general all writs provision. We deem appellant to have waived, therefore, any issue as to the potential availability of these alternative avenues of relief. *Federal Deposit Ins. Corp. v. Rivera–Arroyo*, 907 F.2d 1233, 1234 n. 1 (1st Cir.1990); *Grubba v. Bay State Abrasives, Dresser Industries*, 803 F.2d 746, 747 (1st Cir.1986).

In any event, the writ of error *coram nobis* is "limited to 'those cases where the errors were of the most fundamental character, that is, such as rendered the proceeding itself irregular and invalid.'" *United States v. Michaud*, 925 F.2d 37, 39 (1st Cir.1991) (citation omitted). The appellant is not attacking, in any real way, the regularity or validity of his 1974 drug conviction. At most, he contends that he asked both his attorney and the district court judge whether his guilty plea would affect his ability to enter or remain in the United States. According to appellant, his attorney responded that he did not think so and when the judge asked a probation officer whether it should be noted on the record

that appellant was not to be deported, the probation officer responded that it was up to the Immigration and Naturalization Service. Even accepting appellant's recollection of these conversations as accurate, appellant does not contend that his plea was involuntary, in that he would not have pled guilty except for assurances as to his immigration status. Nor do we think that any such claim of reliance could be reasonable in light of the uncertainty expressed in the very conversations cited. There was no fundamental error in the underlying drug conviction, warranting issuance of a writ of error *coram nobis*.

Similarly, we see no ground for issuance of any other writ which might be available under 28 U.S.C. § 1651(a).

**4.** Although appellant is ineligible for permanent resident status because of his conviction, according to appellant, he has been allowed to return to the United States for brief periods of time, apparently pursuant to visa waivers. *See* 8 U.S.C. § 1182(d)(3) (temporary admission of nonimmigrants).

**5.** Rule 60(b), in pertinent part, states "Writs of *coram nobis, coram vobis, audita querela*, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."

itself, has recognized that "few courts ever have agreed as to what circumstances would justify relief under these old remedies", i.e., the common law writs of *coram nobis* and *audita querela. Klapprott v. United States,* 335 U.S. 601, 614, 69 S.Ct. 384, 390, 93 L.Ed. 1099 (1949) (opinion of Justice Black). Black's Law Dictionary, *supra,* instructs that the writ is sought "to obtain relief against the consequences of the judgment on account of some matter of defense or discharge arising since its rendition and which could not be taken advantage of otherwise." Although the appellant seeks relief against the consequences of his 1974 conviction, i.e., he seeks relief from the bar to permanent resident status he presumably could obtain except for his conviction, and contends that he married a United States citizen in 1981 and has "demonstrated rehabilitation over a very substantial period of time," he offers no defense to, or evidence which could support a discharge from, that conviction which has arisen since its rendition. See footnote 3.

■ We agree with the D.C. Circuit Court of Appeals that the writ of *audita querela* does not and cannot, under any stretch of imagination, provide a purely equitable basis for relief independent of any legal defect in the underlying judgment. *United States v. Ayala,* 894 F.2d at 429. The *Ayala* court disagreed with *United States v. Ghebreziabher,* 701 F.Supp. 115 (E.D.La.1988) and *United States v. Salgado,* 692 F.Supp. 1265 (E.D. Wash.1988), insofar as those courts found the issuance of the writ of *audita querela* appropriate even in the absence of some *legal* objection to a criminal conviction. *Id.*

It is fairly evident from the court's opinion in *Salgado* that the equities of that case motivated that court to find some authority pursuant to which it could render what even the government in that case perceived as the just result. Mr. Salgado first entered this country lawfully in 1943, married a United States citizen in 1947, and was granted permanent resident alien status in 1948. In 1964, he pled guilty to a charge of failing to pay transfer tax on a small quantity of marijuana and was sentenced to two years of imprisonment, during which time he went through deportation proceedings. He was ordered deported. After serving approximately eighteen months, he was released and self-deported. Advised that he could not re-enter the United States for two years, he remained in Mexico until 1969, then re-entered the United States using the green card which had never been taken from him. He worked steadily for the next fifteen years, was inspected on numerous occasions by Immigration and Naturalization Service (INS) agents, and left and re-entered the country from time to time, all without incident. In 1984, Mr. Salgado applied for Social Security benefits. It was then determined that, insofar as the INS was concerned, he was in the country unlawfully. He was later arrested as an illegal alien and deportation proceedings were commenced. *United States v. Salgado,* 692 F.Supp. at 1266.

The district court in *Salgado* believed that "under the totality of the circumstances, it would be a gross injustice to allow this man, who has by all accounts been a model resident for forty-five years save for a single period of unlawful conduct, to effectively serve a life sentence, and for his family to be deprived of benefits from a fund he has paid into throughout his working life." *Id.* at 1268. The court believed that the definition of *audita querela* "appears sufficiently broad to encompass the scenario presented here where Mr. Salgado seeks 'relief against the *consequences* of the judgment;' and where a refusal to grant such relief would strip him of access to newly created rights which he would otherwise clearly be entitled to by operation of law." *Id.* at 1269 (emphasis in the original).

With respect, we believe that the *Salgado* court, in seeking to do justice, nonetheless ignored that part of the definition of *audita querela* which requires the showing of "some matter of defense or discharge," i.e., a legal defect in the conviction, arising since the conviction. In so doing, that court also added the equitable consideration of whether "a refusal to grant such relief would strip him of access to newly created rights which he would

otherwise clearly be entitled to by operation of law." *Id.* at 1269. It found a newly created right in the amnesty provisions of the Immigration Reform and Control Act of 1986 (IRCA), codified at 8 U.S.C. § 1255a, which adjusted the status of certain entrants to the United States. *Id.* at 1270. The *Salgado* case was the first, it appears, in which a criminal conviction was vacated pursuant to a writ of *audita querela.*

Based on *Salgado,* the district court in *Ghebreziabher* granted an application for a writ of *audita querela* and vacated one of three misdemeanor convictions for food stamp trafficking, which then allowed the defendant to become eligible for the amnesty program implemented by IRCA. *United States v. Ghebreziabher,* 701 F.Supp. at 116–17; *see* 8 U.S.C. § 1255a(a)(4) (barring eligibility if convicted of three or more misdemeanors). The *Ghebreziabher* court determined that relief was warranted in the "interests of justice" and that conviction on two counts with the same sentence would "not in any way prejudice the United States." *Id.* at 117.

We have found three additional cases, aside from the present one, addressing the writ of *audita querela.* In *United States v. Grajeda–Perez,* 727 F.Supp. 1374 (E.D. Wash.1989), the petitioner sought a writ of *audita querela* to vacate a conviction for being an alien in possession of a firearm, in order to obtain legalization under IRCA. The district court in *Grajeda–Perez* concluded that the writ of *audita querela* was inappropriate because, whereas *audita querela* traditionally has been used only to obtain relief from the consequences of a judgment, the remedy sought in *Grajeda–Perez* was vacation of the judgment itself. *Id.* at 1375. Nonetheless, the court in *Grajeda–Perez* vacated the conviction, finding such a remedy warranted and available pursuant to the All Writs Act, 28 U.S.C. § 1651(a). *Id.*

In *United States v. Acholonu,* 717 F.Supp. 709 (D.Nev.1989), the petitioner sought *audita querela* to vacate a conviction of mail fraud, in order to be eligible for the amnesty provisions of IRCA. The

district court determined that IRCA constituted neither a discharge to petitioner's conviction because IRCA specifically disqualified a convicted felon from the amnesty program nor was it a defense to petitioner's conviction because the IRCA amnesty provision is irrelevant to the substantive law and facts upon which petitioner was convicted. *Id.* at 710. The *Acholonu* court then acknowledged that the *Salgado* and *Ghebreziabher* courts had found *audita querela* available on purely equitable grounds, i.e., "not only where subsequent events constitute a 'defense' or a 'discharge' to a judgment but where subsequent events render the continued existence of the judgment, and its consequences, unjust." *Id.* The *Acholonu* court declined to decide whether *audita querela* was available on purely equitable grounds, concluding that even were *audita querela* so available, justice did not demand the vacation of petitioner's conviction. *Id.* Unlike the vacation of one out of three convictions in *Ghebreziabher,* a vacation of petitioner's one conviction would vitiate the government's interest in the maintenance of a criminal record. *Id.* The court noted that "[t]he government's interest in maintaining a criminal record includes the general deterrence effects of the consequences of a criminal record as well as the protection of the public by providing notice of an individual's past misdeeds." *Id.* at 711 n. 3. And, unlike the twenty-four year old conviction in *Salgado,* the petitioner's conviction was less than nine years old; the vacation of the conviction was opposed by the government and the government's interest in maintaining a criminal record of a conviction of mail fraud for longer than nine years is not insubstantial. *Id.* at 711.

The most recent case we have found discussing *audita querela* is *United States v. Garcia–Hernandez,* 755 F.Supp. 232 (C.D.Ill.1991). The petitioner in *Garcia–Hernandez* sought relief, via *audita querela,* from his conviction for transporting an illegal alien, in order to be eligible for the amnesty provisions of IRCA. *Id.* at 232. The *Garcia–Hernandez* court denied the writ, agreeing with the D.C. Circuit

court in *Ayala* that the writ is available as a basis to vacate a conviction only if there is a legal objection raised which is not otherwise cognizable under the existing scheme of post-conviction remedies. *Id.* at 235. The court rejected the purely equitable basis for relief found by the *Salgado, Ghebreziabher,* and *Grajeda–Perez* courts, concluding that courts are without the means to remedy a totally valid conviction merely because a court dislikes the collateral effect of the conviction under IRCA. *Id.* While the consequences of a criminal conviction vis-a-vis eligibility for the amnesty provisions under IRCA may be harsh, the *Garcia–Hernandez* court eschewed the availability of the writ of *audita querela* as a means to circumvent the application of laws which a court considers inequitable. *Id.*

We agree with the *Ayala* and *Garcia–Hernandez* courts that, if available at all, the writ of *audita querela* can only be available where there is a *legal* objection to a conviction, which has arisen subsequent to that conviction, and which is not redressable pursuant to another post-conviction remedy. Not only is this view truer to the definition of this writ, *see* Black's definition, *supra* at 4, it respects the proper interest of the legislative branch in defining the beneficiaries of its laws and of the executive branch in maintaining the integrity of convictions lawfully obtained. It follows that, even assuming the writ is available—an issue fraught with many problems that we expressly do not now decide—petitioner could not be entitled to the writ here, as he points to nothing occurring since his conviction that would render his conviction illegal.

Indeed, even were it possible for the writ of *audita querela* to provide a purely equitable basis for relief independent of any legal defect in the underlying judgment, the equities do not favor the appellant in this case. The appellant attempts to argue, much as the successful petitioners did in *Salgado, Ghebreziabher,* and *Grajeda–Perez,* that a refusal to grant him relief would strip him of access to newly created rights which he would otherwise clearly be entitled to by operation of law. The appellant stands distinctly apart from the aforementioned successful petitioners, however. Whereas those district courts which issued a writ, either *audita querela* or pursuant to 28 U.S.C. § 1651(a), did so upon finding a newly created right in the amnesty provisions of IRCA, such a right would not pertain to this appellant, in any event. Without suggesting that any other essential requirements (such as timely application) are met, we note that, to be eligible for such provisions, an alien must establish that he has been continuously physically present in the United States since November 6, 1986, 8 U.S.C. § 1255a(a)(3), and appellant admits that he has traveled into and out of the United States on visa waivers.

Appellant suggests, however, that he has a newly created right to permanent resident status by virtue of his marriage in 1981 to a United States citizen. Appellant points to no statute, however, which so states, and it turns both the criminal and the immigration and naturalization laws on their head to suggest that an alien, duly convicted under United States law, may obtain a vacation of his conviction and permanent resident status, to which he is not entitled by virtue of his conviction, simply by marrying a United States citizen. We agree with the district court below that "the government's interest in maintaining a criminal record, including the general deterrent effects of the consequences of a criminal record, and the efficient enforcement of the immigration laws, outweighs the petitioner's interest in circumventing the legal requirements for permanent legal resident status." *United States v. Holder,* 741 F.Supp. at 30.

The *Salgado* case—apparently the first in recent times in which a writ of *audita querela* issued—presented unusually sympathetic facts, which caused the court to believe that extraordinary relief was warranted. While we may question the availability of relief under the writ even on *Salgado's* facts, we completely agree with the *Salgado* court's comment that, "it would seem a legitimate concern of the

**6**

system that vacation of a longstanding judgment be a jealously guarded exception to cure the freakish case rather than a readily available remedy to cure the mundane." *United States v. Salgado*, 692 F.Supp. at 1267. The case before us falls well short of fitting into any "jealously guarded exception." The judgment of the district court is

*Affirmed.*

* Of the Fifth Circuit, sitting by designation.