**Guillermo QUINTANA, Plaintiff,**

v.

**Louis NICKOLOPOULOS, et al., Defendants.**

Civ. A. No. 90–4722.

United States District Court, D. New Jersey.

July 19, 1991.

David Elving Schwartz, Springfield, N.J., for plaintiff.

Robert J. Del Tufo, Atty. Gen. of N.J. by Arthur S. Safir, Deputy Atty. Gen., Div. of Criminal Justice, Dept. of Law and Public Safety, Trenton, N.J., for defendants.

## OPINION & ORDER

HAROLD A. ACKERMAN, District Judge:

This matter comes before the court on the petition of plaintiff Guillermo Quintana ("Quintana") for Writ of Error Audita Querela. More specifically, Quintana seeks relief from the collateral immigration consequences of his guilty plea to possession of a controlled dangerous substance on the grounds that he lacked effective assistance of counsel when entering his plea and that his law-abiding behavior both before and after his arrest and imprisonment make deportation inequitable. Defendants oppose Quintana's petition, claiming that Quintana is proceeding via a writ abolished by Federal Rule of Civil Procedure 60(b) and, therefore, is not properly before the court. Quintana's proper alternative, the government contends, is to exhaust any remaining state remedies prior to seeking federal review of what is essentially a state matter.

### I. Background

A citizen of Colombia, South America, Quintana is an illegal alien who has resided in this country since February 5, 1979. Sometime in late 1985, Quintana was arrested and charged with a three count indictment. He eventually pled guilty to the first count—namely, possession with the intent to distribute cocaine—in return for the dismissal of counts two and three. On February 14, 1986, Quintana was sentenced to a term of seven years imprisonment. He served approximately sixteen months in state prison before being released on parole. On November 18, 1990, he completed his term and was discharged by the parole board.

Upon his release from prison, Quintana applied for legalization of his residency status pursuant to the Immigration Reform and Control Act of 1986. See 8 U.S.C. 1255 et seq. He now contends and the government does not dispute that except for his conviction, Quintana would qualify for amnesty and legalization of his residency status. Nevertheless, shortly after submitting his application for legalization of his status, Quintana was served with an Order to Show Cause, Notice of Hearing, and Warrant for Arrest regarding Deportation by the United States Immigration and Naturalization Service. In response, he filed a petition for writ of habeas corpus in which he sought to have his conviction overturned on the grounds that his attorney's failure to accurately inform him of the immigration consequences of a guilty plea constituted ineffective assistance of counsel. Because he failed to raise this claim in state court, his petition was denied. See *Quintana v. Perretti*, Civ. Act. No. 898–3592 (Sept. 7, 1990). Several months later, he filed the present motion for writ of error audita querela.

### II. Discussion

Historically, the common law writ of error audita querela "afford[ed] relief to a judgment debtor against a judgment or execution because of some defense or discharge arising subsequent to the rendition of the judgment." 11 C. Wright & A. Miller, Fed.Prac. & Proc. § 2867 at 235 (1973). It was also recognized as a procedural mechanism for criminal defendants in some jurisdictions. See *United States v. Ayala*, 894 F.2d 425, 427 (D.C.Cir.1990). In 1948, an amendment to Federal Rule of Civil Procedure 60(b) abolished the use of this and other common law writs in civil cases. See Fed.R.Civ.Proc. 60(b) ("Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished...."). Six years later, however, the Supreme Court held that the All Writs Act, 28 U.S.C.

§ 1651(a) (1988), authorized federal courts to entertain motions pursuant to the writ of coram nobis [1] in federal criminal cases where other post-conviction remedies were inapplicable. See *United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954). Relying on the Supreme Court's reasoning in *Morgan*, several lower courts have also permitted defendants in federal criminal cases to bring motions pursuant to writ of error audita querela. See *United States v. Holder*, 741 F.Supp. 27 (D.C.Puerto Rico 1990) (permitting writ to be brought, but denying it); *United States v. Grajeda–Perez*, 727 F.Supp. 1374 (E.D.Wash.1989) (granting writ); *United States v. Acholonu*, 717 F.Supp. 709 (D.C.Nev.1989) (permitting writ to be brought, but denying it); *United States v. Ghebreziabher*, 701 F.Supp. 115 (E.D.La. 1988) (granting writ); *United States v. Salgado*, 692 F.Supp. 1265 (E.D.Wash.1988) (granting writ). But see *Ayala*, 894 F.2d at 427 ("At least under the circumstances presented by this appeal, we hold that *audita querela* has been similarly superseded in federal *criminal* practice by 28 U.S.C. § 2255 and the writ of *coram nobis* . . . ."); *United States v. Kimberlin*, 675 F.2d 866 (7th Cir.1982) (doubting that the writ of error audita querela is available in federal criminal practice).

The first question before the court today is whether a writ of error audita querela is the appropriate procedural mechanism for Quintana to bring his substantive claim before this court. The answer is that it is not. Via his writ, Quintana is attacking both the validity and collateral consequences of his state conviction. Even if the writ of error audita querela is a viable procedural mechanism in criminal cases, its use is limited solely to *federal* criminal cases.[2] Where a defendant is seeking to challenge the validity of his state conviction or the duration of his state sentence, the Supreme Court has clearly held that the writ of habeas corpus is his *exclusive* remedy. See *Wolff v. McDonnell*, 418 U.S. 539, 554, 94 S.Ct. 2963, 2973, 41 L.Ed.2d 935 (1974); *Preiser v. Rodriguez*, 411 U.S. 475, 489–91, 93 S.Ct. 1827, 1836–37, 36 L.Ed.2d 439 (1973).

Having decided that a writ of habeas corpus is Quintana's exclusive remedy, the next question is whether this motion, when construed as a writ of habeas corpus rather than audita querela, should be granted. Again, the answer is no.[3] Although Quintana's contention that he lacked effective assistance of counsel raises a federal issue cognizable under habeas corpus, it is one that he has not previously presented to state court. As this court informed him in his previous habeas petition, he must first exhaust his state remedies before bringing this claim to federal court. See *Quintana v. Perretti*, Civil Action No. 89–3592 (D.N.J. Sept. 19, 1990) (Sarokin, J.). With respect to his contention that his law-abiding behavior both prior to his conviction and after his imprisonment render the collateral effects of his guilty plea inequitable, I must remind him

---

1. Historically, the writ of coram nobis permitted a party to apply in a subsequent term to the court that rendered judgment against it for revocation of the judgment on the grounds that there were errors of fact not apparent on the record. See 11 C. Wright & A. Miller, Fed.Prac. & Proc. § 2867 at 235 (1973). Today, the writ has been interpreted as encompassing both errors of fact and law in federal criminal cases. Its use is limited, however, to filling those gaps left in the post-conviction remedial scheme. Therefore, since other federal post-conviction remedies have a custody requirement, see, e.g., 28 U.S.C. §§ 2243, 2255 (1988), it is primarily used on behalf of defendants who either have not yet commenced or have completed service of their sentences. See 3 C. Wright, Fed.Prac. & Proc. (Criminal) § 592 (1982).

2. Indeed, in every federal case where a writ of error audita querela was permitted, the defendant had been convicted of federal, not state, charges. See cases cited supra page 4.

3. Although Quintana is no longer "in custody" for purposes of the 28 U.S.C. § 2254 (1988), this is not the problem. The court has jurisdiction over this motion because Quintana was in custody when the motion was filed. See *Maleng v. Cook*, 490 U.S. 488, 490–91, 109 S.Ct. 1923, 1925, 104 L.Ed.2d 540 (1989) (per curiam); *Carafas v. LaVallee*, 391 U.S. 234, 238, 88 S.Ct. 1556, 1559–60, 20 L.Ed.2d 554 (1968) ("[W]e conclude that under the [habeas] statutory scheme, once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on the application.")

that a federal district court is a court of limited jurisdiction. The habeas statute gives this court the authority to grant a writ of habeas corpus only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2254 (1988). Therefore, this court does not have the power to void Quintana's state conviction for the equitable reasons he raises.[4]

### CONCLUSION AND ORDER

For all the foregoing reasons, it is on this 19th day of July, 1991:

ORDERED that defendant's motion for writ of error audita querela or, in the alternative, habeas corpus is denied without prejudice.

---

**4.** It appears that Quintana still has several possible alternatives, although this court will not pass judgment on their procedural or substantive merits here. For instance, he could raise his equitable concerns regarding the collateral consequences of his state conviction to the state courts. Or, he could bring an equitable or legal challenge to the federal deportation statute itself. Finally, he could contest the validity of his state conviction when he proceeds under the Immigration and Nationality habeas corpus provision. See 8 U.S.C. § 1105a (1988).