UNITED STATES of America, Plaintiff,

v.

**Manapurath Eappen JOHNSON, Defendant.**

**No. 83 CR 159.**

United States District Court, N.D. Illinois, E.D.

Sept. 25, 1991.

Fred Foreman, U.S. Atty. and Jerome N. Krulewitch, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

James W. Reilley, James W. Reilley & Associates, DesPlaines, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Manapurath Eappen Johnson—originally indicted, convicted on a guilty plea and then sentenced under the name M.E. Johnson ("Johnson")—has petitioned for a vacation of his conviction by issuance of a writ of audita querela, a writ of coram nobis or a writ of undefined specificity under the All Writs Act, 28 U.S.C. § 1651.[1] For the reasons stated in this memorandum opinion and order, Johnson's petition is denied.

### Background

On June 28, 1983 Johnson changed his prior not-guilty plea to a plea of guilty to two counts of the indictment in this case, involving charges of conspiracy and distribution of a controlled substance (opium) in violation of 21 U.S.C. §§ 841(a)(1) and 846. On September 1 of that same year, this Court sentenced Johnson:

1. to two years' imprisonment on Count Four, suspending execution of that sentence during a five-year probationary period that included a four-month work-release custodial requirement, plus a special parole term of seven years; and

2. to five years' probation on Count One, running concurrently with the probationary term under Count Four.

Because Johnson was then a permanent resident alien in the United States, the Immigration and Naturalization Service ("INS") undertook to deport him to India. That led to extended legal proceedings, which have culminated in a June 29, 1990 decision by our Court of Appeals upholding the denial of Johnson's request for relief under Immigration and Nationality Act § 212(c), 8 U.S.C. § 1182(c) (an unpublished order reported at 907 F.2d 153 (7th Cir. 1990) and available in full text as 1990 U.S.App. LEXIS 10916).[2]

On July 31, 1990 Johnson filed a motion with this Court to vacate or set aside his sentence and stay his deportation, invoking 28 U.S.C. § 2255. After this Court denied such relief because of its view that jurisdiction was lacking, Johnson obtained a stay of deportation from this Court's colleague Honorable Nicholas Bua (then acting as emergency judge), who relied on the All Writs Act for that purpose. That stay is apparently still in effect.

On August 16, 1991 Johnson filed the current petition with this Court. In factual terms his situation deserves the strongest sympathy despite his single drug-related offense, but the issue is rather whether this Court is properly empowered to grant relief based on those sympathy-evoking factors.

### Writ of Audita Querela

Johnson has the good fortune to have a capable and imaginative lawyer, James W. Reilley ("Reilley"), representing him. In this instance Reilley has come up with the invocation of the ancient writ of audita querela, all other roads having been blocked. That writ has been abolished in civil cases by the adoption of Fed.R.Civ.P. 60(b), but it is not equally clear that it is wholly unavailable in federal criminal cases (*United States v. Kimberlin*, 675 F.2d 866,

---

**1.** Even though Johnson's petition is framed in those alternative terms, the memoranda filed on his behalf clearly stake everything on a single throw: audita querela. Johnson's nonreliance on coram nobis and on the generalized provisions of the All Writs Act makes good sense, given the uniform case law prescribing the grounds for relief under either of those aus-

pices—grounds that Johnson could not even arguably satisfy.

**2.** "Culminated" may be the wrong word, for the briefing on the current petition indicates that Johnson may have still another appeal pending before the Court of Appeals.

869 (7th Cir.1982)). For the present this Court will assume that audita querela *is* potentially available, so that the question is instead (as in *Kimberlin*) whether it would apply under the situation presented here.

On that score, it should be made clear—cutting away all the underbrush that both sides have strewn about the landscape in their opposing memoranda submitted on the current petition—that there was no defect either in the conviction or the sentence that this Court imposed on Johnson. With no *legal* defect thus available as a peg on which Johnson can hang his hat, the question becomes whether audita querela operates to remedy a result that is challenged as unfair. If that characterization is instead changed to "just unfair" or "merely unfair," this Court should not be mistaken as denigrating the concept of unfairness. What is rather intended to be conveyed is the same concept as the term "purely equitable" that has been employed by two Courts of Appeals in *United States v. Ayala*, 894 F.2d 425, 429 (D.C.Cir.1990) and *United States v. Holder*, 936 F.2d 1, 3 (1st Cir.1991) (per curiam), each of which decisions rejected such a use of the writ.

Before this opinion turns to the proper scope of audita querela, it should be said that if the issue *were* one of balancing equitable considerations, this Court would find the United States' presentation extraordinarily unpersuasive. Much of what the government's responsive memorandum states on the subject of fairness or equity, as contrasted with that memorandum's discussion of the legal questions about the writ's availability, reflects the kind of small-mindedness that in recent years has become identified with too much of the INS' activities. It scarcely accords with the message sought to be conveyed to our noncitizens by the inscription that was authored by poetess Emma Lazarus (*The New Colossus*) to be placed at the base of the Statue of Liberty.

But having said that, this Court cannot embrace the concept that defense counsel urges (perhaps out of frustration): that of granting unbounded discretion to the district judge, apparently without any standard except perhaps a vague "do the right thing." That would return us to the time when equity was pejoratively described as measured by the length of the chancellor's foot—the kind of judicial monarchy, or perhaps judicial anarchy, decried in John Selden's 17th century work *Table Talk* under the heading *Equity:*

> Equity is a roguish thing. For Law we have a measure, know what to trust to; Equity is according to the conscience of him that is Chancellor, and as that is larger or narrower, so is Equity. 'Tis all one as if they should make the standard for the measure we call a "foot" a Chancellor's foot; what an uncertain measure would this be! One Chancellor has a long foot, another a short foot, a third an indifferent foot. 'Tis the same thing in the Chancellor's conscience.

And if it were to be urged in response that the exercise of such unbounded discretion is permissible because it is subject to appellate review, pray tell on what standard there? By substituting the feet of three Court of Appeals judges for that of the district judge "chancellor"?

It is of course tempting to respond affirmatively to Johnson's invitation: Any potential exercise of unfettered power tends to appeal to the human tendency to self-aggrandizement—and this opinion has already said that the equities, the sympathies, lie with Johnson. But the essence of judicial responsibility is to resist such temptations and instead to follow the path directed by precedent.

To be sure, some District Judges have accepted such invitations out of a commendable desire to do good. But both Courts of Appeals that have considered the matter have held that there must be some defect in the underlying conviction—or perhaps a defect in the sentence that would taint the conviction—in order to justify application of the writ of audita querela to set aside that conviction. That principle has been stated most succinctly in the more recent of those opinions, *Holder*, 936 F.2d at 5 (emphasis in original):

> We agree with the *Ayala* and [*United States v.*] *Garcia–Hernandez* [, 755

F.Supp. 232 (C.D.Ill.1991) ] courts that, if available at all, the writ of *audita querela* can only be available where there is a *legal* objection to a conviction, which has arisen subsequent to that conviction, and which is not redressable pursuant to another post-conviction remedy. Not only is this view truer to the definition of this writ, *see* Black's definition, *supra* at 4,[3] it respects the proper interest of the legislative branch in defining the beneficiaries of its laws and of the executive branch in maintaining the integrity of convictions lawfully obtained. It follows that, even assuming the writ is available—an issue fraught with many problems that we expressly do not now decide—petitioner could not be entitled to the writ here, as he points to nothing occurring since his conviction that would render his conviction illegal.

Johnson's counsel's efforts to distinguish the three just-referred-to cases on their facts raise distinctions without a legal difference. Like *Ayala, Holder* and Judge Richard Mills in *Garcia–Hernandez,* this Court declines the invitation to follow its conscience rather than solidly-based precedent. Johnson's petition is denied.

---

**3.** [Footnote by this Court] Black's Law Dictionary 120 (5th ed. 1979) defines audita querela in these terms:

    The name of a common law writ constituting the initial process in an action brought by a judgment defendant to obtain relief against the consequences of the judgment on account of some matter of defense or discharge arising since its rendition and which could not be taken advantage of otherwise.