**John DOE, Petitioner–Appellee,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent–Appellant.**

No. 97–16093.

United States Court of Appeals, Ninth Circuit.

Argued Feb. 11, 1997.

Submission Deferred Feb. 20, 1997.

Submitted April 22, 1997.

Decided July 29, 1997.

Cynthia M. Parsons, Assistant United States Attorney, Phoenix, AZ, for respondent–appellant Immigration and Naturalization Service.

Jeanette Chevalier–White, Attorney at Law, Phoenix, AZ, for petitioner–appellee John Doe.

Before: SCHROEDER, ALARCON and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether a writ of *audita querela* may issue to vacate a criminal conviction on solely equitable grounds.

I

John Doe is a native and citizen of Mexico, who entered the United States without inspection in December 1987. On June 16, 1988, Doe applied for amnesty as a Special Agricultural Worker ("SAW") under the Immigration Reform and Control Act of 1986 ("IRCA"). *See* 8 U.S.C. § 1160. The application was denied on November 8, 1988, and Doe appealed.

In the meantime, in August 1989, Doe pleaded guilty to possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a). The United States Attorney's Office agreed in the plea agreement to inform the INS of Doe's cooperation in other investigations and prosecutions, and to recommend against his deportation. Doe was sentenced to thirteen-months imprisonment and five-years supervised release on April 12, 1990.

The Drug Enforcement Administration ("DEA") sent the INS a letter dated August 5, 1991. The letter stated that Doe had provided valuable assistance and asked that the INS grant Doe resident alien status. "[T]he Drug Enforcement Administration believes strongly that Mr. [Doe] would be killed or physically harmed if deported to the Republic of Mexico due to his past participation with the Drug Enforcement Administration." On August 9, 1991, the United States Attorney's Office also sent a letter recommending that the INS not deport Doe due to his substantial cooperation.

The district court discharged Doe from supervised release on April 9, 1993. On May 27, 1994, Doe filed a petition for a writ of *audita querela.* He asked the district court to vacate his 1990 conviction on equitable grounds to prevent his deportation. On August 23, 1994, while the petition was pending, the INS Administrative Appeals Unit dismissed Doe's appeal of the denial of his SAW application. The decision explained that Doe "had been convicted of a felony, was excludable under section 212(a)(23) of the Act, and could not provide documentation to establish that he had performed seasonal agricultural services in the United States for at least 90 man-days during the twelve-month period ending May 1, 1986."

The district court referred Doe's petition for a writ of *audita querela* to a magistrate judge. The magistrate judge recommended that the district court deny the petition because the writ could not issue on solely equitable grounds. The district court rejected the magistrate judge's recommendation, explaining that the Ninth Circuit had not expressly resolved the issue. The district court concluded, "under the specific facts and equities of this case, that the writ should issue and petitioner's conviction be vacated." The INS timely appeals.

## II

In *United States v. Fonseca–Martinez,* 36 F.3d 62 (9th Cir.1994), we raised, without deciding, "whether the writ of *audita querela* may issue to vacate an otherwise valid criminal conviction solely on equitable grounds." *Id.* at 64. The defendant, Fonseca–Martinez, had sought to vacate his drug conviction to avoid deportation. He recited as equities that he had lived in the United States for ten years, that he was married to a U.S. citizen with whom he had three children, that he was rehabilitated, and that he fully supported his family. *Id.* at 65. Since we considered these equities insufficient to warrant relief even assuming the writ was available, we did not expressly "decide whether the writ may ever issue solely on equitable grounds." *Id.*

■ Here, unlike in *Fonseca–Martinez,* the equities are compelling. The district court found that Doe "will be killed or physically harmed if deported to the Republic of Mexico due to his past participation with the Drug Enforcement Administration." [1] We therefore shall address whether *audita querela* provides a remedy.

## III

" 'Audita querela' was a common law writ to afford relief to a judgment debtor against a judgment or execution because of some defense or discharge arising subsequent to the rendition of the judgment or the issue of the execution." *Id.* at 63–64 (quoting 11 Wright & Miller, *Federal Practice and Procedure* § 2867, at 235 (1973)).

The 1946 amendments to Federal Rule of Civil Procedure 60(b) expressly abolished several common law writs, including *audita querela* and *coram nobis.* [2] In *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), the Supreme Court held that district courts still retain limited authority to issue writs of *coram nobis* in collateral

---

1. The DEA has represented that if Doe ultimately is "ordered removed and fail[s] to obtain any other form of relief, DEA would request an 'S' visa on his behalf and would provide information to the pardon attorneys if [Doe] requested a pardon". Respondent's Supplemental Brief, pp. 14–15.

2. "Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action." Fed. R.Civ.P. 60(b).

criminal proceedings. The Court noted, first, that Rule 60(b)'s abolition of certain common law writs applies only to civil proceedings. *Id.* at 505 n. 4, 74 S.Ct. at 249 n. 4. The Court went on to reject the argument that the federal habeas statute, 28 U.S.C. § 2255, abolished common law writs in criminal proceedings. *Id.* at 511, 74 S.Ct. at 252–53. Rather, the Court held that the All Writs Act, 28 U.S.C. § 1651(a),[3] authorized the district court to entertain a *coram nobis* motion, which, unlike habeas corpus, affords relief even when the defendant is no longer in custody. *Id.* at 506–10, 74 S.Ct. at 249–52.

"The teaching of *Morgan,*" as the District of Columbia Circuit has explained, "is that federal courts may properly fill the interstices of the federal postconviction remedial framework through remedies available at common law." *United States v. Ayala,* 894 F.2d 425, 428 (D.C.Cir.1990).

### A

Two district courts have purported to find "gaps" in the federal postconviction remedial framework for the writ of *audita querela* to fill. In *United States v. Salgado,* 692 F.Supp. 1265 (E.D.Wash.1988), the district court relied on *audita querela* to vacate a twenty-four-year-old tax-evasion conviction. The INS had denied Salgado amnesty under the IRCA because of the conviction. The district court believed that *audita querela* "appears sufficiently broad to encompass the scenario presented here where Mr. Salgado seeks 'relief against the *consequences* of the judgment'...." *Id.* at 1269. Likewise, in *United States v. Ghebreziabher,* 701 F.Supp. 115 (E.D.La.1988), the district court vacated a food-stamp fraud conviction so the defendant would be eligible for amnesty under the IRCA. The *Ghebreziabher* court, citing *Salgado,* determined that *audita querela* could issue in the "interests of justice." *Id.* at 117.

### B

The *Salgado* and *Ghebreziabher* courts, we agree with each of our sister circuits to address the issue, misconstrued the scope of the writ.

### 1

At common law *audita querela* was available only to relieve a judgment debtor where a legal defense or discharge arose subsequent to the judgment.[4] The District of Columbia Circuit was first to explain why *Salgado* and *Ghebreziabher* were

> mistaken, as a historical matter, in their conclusion that *audita querela* furnishes a purely "equitable" basis for relief independent of any legal defect in the underlying judgment. Commentators and jurists since the time of Blackstone have emphasized the need to show a postjudgment contingency supplying a "matter of discharge" or "defense."

*Ayala,* 894 F.2d at 429 (citing 3 W. Blackstone, Commentaries \*405–06).

■ As stated somewhat more metaphorically by the Seventh Circuit,

> [a]udita querela is not a wand which may be waved over an otherwise valid criminal conviction, causing its disappearance; rather, it provides relief from the consequences of a conviction when a defense or discharge arises subsequent to entry of the final judgment. The defense or discharge must be a legal defect in the conviction, or in the sentence which taints the conviction. Equities or gross injustice, in themselves, will not satisfy the legal objection requirement and will not provide a basis for relief.

*United States v. Johnson,* 962 F.2d 579, 582 (7th Cir.1992); The First, Second, and Fifth Circuits have all reached the same conclusion. *United States v. Holder,* 936 F.2d 1, 5 (1st Cir.1991) (holding that "if available at all, the writ of *audita querela* can only be avail-

---

3. "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

4. Courts have noted that the difference between *coram nobis* and *audita querela* is one of timing, not substance. *Coram nobis* was used to attack a judgment that was infirm at the time it was rendered for reasons that later came to light. *Audita querela* was used to attack a judgment that was correct when rendered but later was rendered infirm by matters arising after its rendition. *See Reyes,* 945 F.2d 862, 863 n. 1 (5th Cir.1991); *Ayala,* 894 F.2d at 429.

able where there is a *legal* objection to a conviction, which has arisen subsequent to that conviction, and which is not redressable pursuant to another post-conviction remedy"); *United States v. LaPlante*, 57 F.3d 252, 253 (2d Cir.1995) (explaining that "[a]udita querela is probably available where there is a legal, as contrasted with an equitable, objection to a conviction"); *United States v. Reyes*, 945 F.2d 862, 866 (5th Cir. 1991) (quoting *Holder*).

2

To re-cast *audita querela* as an avenue for purely equitable relief would violate separation of powers. The historic limitation of the writ to legal defenses and discharges "respects the proper interest of the legislative branch in defining the beneficiaries of its laws and of the executive branch in maintaining the integrity of convictions lawfully obtained." *Holder*, 936 F.2d at 5. For a court to vacate a final conviction solely because the defendant faces deportation would

> usurp the power of Congress to set naturalization and deportation standards and the power of the INS to administer those standards in each individual case, as well as the power of the executive to prosecute criminal offenses. Similarly, in such instances the "pure equity" version of *audita querela* to some extent trenches upon the power and discretion of the President to pardon. Absent a clearer statutory or historical basis, an article III court should not arrogate such power unto itself.

*Reyes*, 945 F.2d at 866. In other words,

> [w]e have a delicately balanced system-one that depends on a separation of powers.

In this instance, Congress is vested with the power to enact immigration legislation, including deportation standards. The executive is empowered to prosecute criminal offenses. Vacating a valid conviction through the purely equitable use of *audita querela* amounts to an end run around properly enacted immigration legislation and essentially rewrites § 241(a)(11) of the Act, which provides for deportation of an alien convicted of a violation of the Controlled Substances Act. The courts may not tinker with this balance without sufficient statutory, or even historical, authority.

*Johnson*, 962 F.2d at 582.

For these reasons, to the extent we left the issue open in *Fonseca–Martinez*, we now expressly join our sister circuits in holding that a writ of *audita querela*, if it survives at all,[5] is available only if a defendant has a legal defense or discharge to the underlying judgment.[6]

IV

With *audita querela* unavailable on purely equitable grounds, Doe argues, in the alternative, that he is entitled to equitable relief under the All Writs Act generally. We disagree. The All Writs Act

> "is not a grant of plenary power to the federal courts. Rather, it is designed to aid the courts in the exercise of their jurisdiction." An order is not authorized under the Act unless it is designed to preserve jurisdiction that the court has acquired

---

5. In addition, with section 2255 and *coram nobis* available to challenge the lawfulness of conviction, several courts have questioned, without deciding, whether *audita querela* survives at all. "[B]ecause the so-called 'pure equity' variant of *audita querela* finds no support in the historical definition of the writ, the authority of federal courts to use it as a 'gap filler' under the All Writs Act is open to serious doubt." *Ayala* 894 F.2d at 429. *See Johnson*, 962 F.2d at 583 (continuing "to question the extent of the viability of *audita querela* given the availability of *coram nobis* and § 2255"); *Reyes*, 945 F.2d at 866 (explaining that "*audita querela* seems to add little, if anything, to the current scheme of post-conviction relief afforded by section 2255 and the writ of *coram nobis*"); *Holder*, 936 F.2d at 5 (noting that whether "the writ is available" is

"an issue fraught with many problems that we expressly do not now decide"); *United States v. Banda*, 1 F.3d 354, 356 (5th Cir.1993) (stating that "*audita querela* is a slender reed upon which to lean").

6. Doe contends, in the alternative, that even if the writ cannot issue on purely equitable grounds, he has legal grounds upon which it may. He claims that vacating a judgment is a "discharge" of his obligations thereunder, which qualifies under the definition of *audita querela*. This contention is a non sequitur. *Audita querela* requires a defense or discharge to the underlying judgment for relief to issue; the relief itself cannot qualify as the prerequisite for the relief.

from some other independent source in law.

*Jackson v. Vasquez*, 1 F.3d 885, 889 (9th Cir.1993) (citation omitted).

Doe has identified no independent source in law that empowers federal courts to vacate convictions to shield defendants from deportation. To hold that the All Writs Act empowers the court to vacate a conviction in order to "right a wrong"-a "wrong" which Congress has legislated for the executive to administer-would implicate the same separation of powers concerns addressed above.

We, therefore, have no authority to grant Doe equitable relief generally under the All Writs Act.

## V

For the foregoing reasons, the writ of *audita querela* may not issue to vacate Doe's conviction on solely equitable grounds.

**REVERSED and REMANDED.**

SCHROEDER, Circuit Judge, Concurring:

I agree that the writ of *audita querela* may not issue on solely equitable grounds, and I concur in Judge O'Scannlain's opinion. I write separately to highlight the equities of the case that have made this a difficult decision, and to elaborate on the position of the United States in this matter.

John Doe has gone beyond the cooperation required of him in his plea agreement and has continued to cooperate with the Drug Enforcement Administration in the investigation of numerous cocaine and heroin dealers. Mr. Doe's assistance to the DEA has resulted in the arrests of several dealers, in whose prosecution Mr. Doe is expected to be a necessary witness, and in the seizures of multi-kilogram quantities of drugs and large amounts of U.S. currency. Both the DEA and the U.S. Attorney's Office have recommended that Mr. Doe be given favorable consideration by the INS and that he not be deported. In the words of the U.S. Attorneys Office, "this man has aligned himself with the United States government [in the war on drugs]." The DEA has indicated that because of Doe's cooperation with the U.S. government, it is likely that he would be killed, tortured, or otherwise physically harmed if deported to his native country. The equities supporting granting him relief from possible deportation are compelling.

Although the federal courts lack authority to vacate Mr. Doe's conviction on purely equitable grounds, the U.S. Attorney has recognized that there are other avenues by which the Executive Branch may permit Mr. Doe to remain in the United States. In its capacity representing the District Director of the INS, the Office of the U.S. Attorney has represented that in exercising the unreviewable discretion to decide whether to seek Mr. Doe's removal, the District Director will give full consideration to the favorable recommendations made on Mr. Doe's behalf by the DEA and the U.S. Attorney's Office in its prosecutorial capacity. Second, the DEA, through the U.S. Attorney has represented that if Mr. Doe were ordered removed and denied all other forms of available relief, the DEA would request that the Attorney General grant Doe an "S" Visa under 8 U.S.C. § 101(a)(15)(S)(i), which would permit Doe to remain for up to three years. *See* C.F.R. § 214.2(t)(5)(ii) (1997). Finally, the DEA has indicated it will cooperate with any request Doe may make for a Presidential pardon, and would provide executive officials evidence that witnesses who cooperate with the DEA and are subsequently returned to Doe's native country are frequently harmed or tortured, often at the hands of or with the acquiescence of government officials.