UNITED STATES of America,
Plaintiff–Appellant,

v.

Jose BRAVO–DIAZ, Defendant–
Appellee.

No. 02–50031.

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 6, 2002.*

Filed Dec. 3, 2002.

Patrick K. O'Toole, United States Attorney (on brief), Carol C. Lam, United States Attorney (when opinion was filed), Dorn G. Bishop, Assistant United States Attorney, U.S. Attorney's Office, San Diego, CA, for the plaintiff-appellant.

Benjamin Sanchez, Jr., San Diego, CA, for the defendant-appellee.

Before HALL, THOMPSON, and WARDLAW, Circuit Judges.

## OPINION

PER CURIAM.

The United States of America appeals from an order of the district court vacating a 1974 drug-smuggling conviction of appellee, Jose Bravo–Diaz. The district court, purporting to act under 28 U.S.C. section 1651(a) (the "All Writs Act"), vacated Bravo–Diaz's conviction in a document styled as an "Order Granting Defendant's Writ

---

* This panel unanimously finds this case suitable for decision without oral argument. See

Fed. R.App. P. 34(a)(2).

for Relief from Judgment." The United States contends that the district court was without jurisdiction to issue such an order. We have jurisdiction pursuant to 28 U.S.C. section 1291. Because the district court did not have jurisdiction, we REVERSE.

## FACTS

On November 18, 1974, Jose Bravo–Diaz was convicted of smuggling 84 pounds of marijuana into the United States in violation of 21 U.S.C. sections 952, 960 and 963. He was sentenced to 100 days in prison and 3 years of probation. He also was ordered not to re-enter the United States were he deported. Upon completion of his 100–day prison term, Bravo–Diaz was deported to Mexico. Subsequent to his deportation, he re-entered the United States illegally. He married a U.S. citizen in 1977. In 1997, Bravo–Diaz pleaded guilty to a domestic violence charge. He was again deported in 1998. He re-entered the country illegally and was deported for a third time in 2000.

In November 2001, Bravo–Diaz filed in the district court a "Motion for Relief in the Form of *Writ of Audita Querela* or or [sic] in the Alternative, Relief Under the *All Writs Act.*" [1] In his brief in support of this motion, Bravo–Diaz submitted evidence tending to show that: he had paid taxes for the last several years; he held regular employment to the satisfaction of his employers; his wife may require some sort of surgery in the near future; and his son has had trouble sleeping since his deportation. He also submitted an unsworn letter from his wife declaring that "Robert Eddy, the head of I.N.S., said if we could expunge the record of 1974, he will allow Jose back into the U.S.A. to be with his family."

On December 10, 2001, a hearing on Bravo–Diaz's motion was held in the United States District Court for the Southern District of California. The court first held that it did not have jurisdiction to grant a writ of audita querela because Bravo–Diaz's conviction was "correct at the time it was entered and is correct today." However, the court found that it had jurisdiction directly under the All Writs Act to vacate Bravo–Diaz's 1974 conviction on solely equitable grounds. The district court granted the motion reasoning that the equities weighed in favor of vacating the conviction because Bravo–Diaz had been "law-abiding and working," and the INS might issue him a green card were his conviction vacated. The district court also took into account what it thought deceased District Judge Leland Neilson, before whom Bravo–Diaz pleaded guilty in 1974, would do in the situation:

> I worked with Judge Neilsen on this court. And one of the things I did was asked myself what I think Judge Neilson would do in this case, and in my mind is not much doubt what Judge Nielson would do.... Once someone has repaid their debt to society, he was a compassionate person. I think here that Mr. Bravo has paid his debt to society.... Whether or not he should get issued a green card is really up to the Immigration & Naturalization Service, and I am sure that's how Judge Nielsen would feel about it. Judge Nielsen would want me to put Mr. Bravo in a position of being eligible to apply for a green card and let them make the determination as to whether or not it should be granted.

The district court then filed an order, purporting to act under the authority of the All Writs Act, in which he vacated

1. This document bore the same docket number as the original criminal case.

Bravo–Diaz's conviction. The United States appeals.

## STANDARD OF REVIEW

█ We review a district court's assertion of jurisdiction under the All Writs Act de novo. *See United States v. Valdez–Pacheco,* 237 F.3d 1077, 1079 (9th Cir. 2001).

## JURISDICTION TO GRANT THE REQUESTED RELIEF

█ It is fundamental to our system of government that a court of the United States may not grant relief absent a constitutional or valid statutory grant of jurisdiction. *See Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 173–174, 2 L.Ed. 60 (1803). In 1974, the district court had jurisdiction to convict Bravo–Diaz under 18 U.S.C. section 3231. In the present proceeding, the district court had jurisdiction, as a matter ancillary to the original conviction, to determine if it had the power to grant the relief requested by Bravo–Diaz. What is at issue is the jurisdiction of the district court to vacate a conviction that the court stated was "correct at the time it was entered and is correct today."

In *Doe,* we held that a writ of audita querela could not issue on solely equitable grounds. *See Doe v. INS,* 120 F.3d 200, 204 (9th Cir.1997). We further held that a conviction may not be vacated under the All Writs Act on solely equitable grounds:

> [Appellant] argues … that he is entitled to equitable relief under the All Writs Act generally. We disagree. The All Writs Act "is not a grant of plenary power to the federal courts. Rather, it is designed to aid the courts in the exercise of their jurisdiction. An order is

not authorized under the Act unless it is designed to preserve jurisdiction that the court has acquired from some other independent source in law." Doe has identified no independent source in law that empowers federal courts to vacate convictions to shield defendants from deportation.

*Id.* at 204–205 (citations omitted).

█ Here, the district court's jurisdiction to re-examine its judgment of conviction had divested long ago. *See United States v. Sumner,* 226 F.3d 1005, 1013 (9th Cir.2000) (once time to file notice of appeal expires, jurisdiction of district court to re-examine judgment of conviction divests). The court had not re-acquired jurisdiction from any independent source in law.

█ None of the extraordinary common law writs could justify the district court's vacation of Bravo–Diaz's conviction.[2] As the district court noted, it had no jurisdiction to issue a writ of audita querela as there were no allegations of a legal defense to Bravo–Diaz's conviction having arisen since his conviction. *See Doe,* 120 F.3d at 203 (writ of audita querela available "where a legal defense or discharge arose subsequent to judgment").

The district court relied on *United States v. Grajeda–Perez,* 727 F.Supp. 1374 (E.D.Wash.1989), for its finding of jurisdiction to vacate Bravo–Diaz's conviction. In *Grajeda–Perez,* the Eastern District of Washington found that it had jurisdiction, under the All Writs Act, to vacate a conviction on solely equitable grounds. *Id.* at 1374. This district court opinion was issued several years before our decision in *Doe* and is in direct conflict with it. Thus, it is not authority to support the proposi-

---

**2.** These writs are statutorily preserved under the All Writs Act to "fill the interstices of the federal postconviction remedial framework".

*United States v. Ayala,* 894 F.2d 425, 428 (D.C.Cir.1990).

tion that district courts may vacate convictions on solely equitable grounds.

 In order to resolve any doubt, we expressly reaffirm and restate our holding in *Doe.* District courts do not have jurisdiction, under the All Writs Act, to vacate convictions on solely equitable grounds. Any contrary decisions from other courts are of no authority in this circuit.

As we stated in *Doe,* vacation of a conviction on the ground that a federal court thinks it is unfair that an alien will be deported as a result of that conviction "usurp[s] the power of Congress to set naturalization and deportation standards and the power of the INS to administer those standards in each individual case". *Doe,* 120 F.3d at 204. Congress has the power to create collateral consequences of a criminal conviction. Congress has chosen that one of these consequences should be that an alien generally should be inadmissible to the United States when he has been convicted previously of a drug crime. *See, e.g.,* 8 U.S.C. § 1182(a)(2). The district court thought that this consequence was inequitable as applied to appellee. We express no opinion on whether the consequence is equitable in general or in the specific case of appellee. We merely, note that Congress has the power to create such a consequence and has not granted federal courts jurisdiction to vacate convictions when that consequence is deemed inequitable. "Absent a clearer statutory or historical basis, an article III court should not arrogate such power to itself." *Doe,* 120 F.3d at 204; *cf. Sumner,* 226 F.3d 1005 at 1015 ("We hold that a district court does not have ancillary jurisdiction in a criminal case to expunge an arrest or conviction record where the sole basis alleged by the defendant is that he or she seeks equitable relief.").

CONCLUSION

The district court's vacation of appellee's conviction is REVERSED. We REMAND with instructions that appellee's conviction be immediately reinstated and the present cause be dismissed for lack of jurisdiction over the subject matter.