**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 30, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DAMARIS RAWLINS,

Petitioner-Appellant,

v.

No. 12-3138

STATE OF KANSAS, and DEREK
SCHMIDT, Attorney General for the
State of Kansas,

Respondents-Appellees.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 5:11-CV-03034-SAC)**

_Submitted on the Briefs:_

Jonathan Laurans, Kansas City, Missouri, on the briefs for Appellant.

Kristafer R. Ailslieger, Deputy Solicitor General, Office of the Kansas Attorney
General, Topeka, Kansas, on the brief for Appellee.

Before **O'BRIEN**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

This case requires us to examine ancient legal writs in a very modern

context. It arises from the 2001 conviction of Damaris Rawlins in Kansas state

court for battery of a police officer. The Kansas court sentenced Rawlins to three years' probation.

Even while not facing jail time, Rawlins timely challenged her conviction in the Kansas courts both through direct appeals and through Kansas's collateral review system, arguing that certain constitutional errors tainted her conviction. Those state-court proceedings lasted for an unusually long period of time, finally concluding with a denial of relief in 2011.

Rawlins continues to believe that her state conviction resulted from constitutional errors. If Rawlins had still been in state custody (including probation) at the conclusion of her collateral review proceedings, she could have continued to press those arguments in federal court through a 28 U.S.C. § 2254 petition. Having long since completed her probation sentence, however, she no longer met § 2254's "in custody" requirement.

Rawlins therefore petitioned the District of Kansas for a writ of audita querela or in the alternative a writ of coram vobis. These ancient common law writs allow courts to reexamine judgments in certain limited circumstances.

The district court assumed that if any writ was appropriate, it was a writ of audita querela. It did not reach the propriety of a writ of coram vobis. The district court then examined Rawlins's constitutional arguments as if brought under a § 2254 petition and concluded that Rawlins merited no relief. The court

therefore denied her petition for a writ of audita querela and entered judgment accordingly.

We conclude that the most analogous writ in these circumstances is the writ of coram nobis, not audita querela. (Rawlins asks for coram vobis rather than coram nobis, but the distinction is immaterial, as discussed further below.) Federal courts, however, have no power to examine a state-court judgment under the writ of coram nobis.

Accordingly, no procedure exists by which we can review Rawlins's state-court conviction under these circumstances. We therefore vacate the district court's judgment and remand with instructions to dismiss for lack of jurisdiction.

## I. Background

Rawlins was arrested for DUI in Kansas City in April 2001 and taken to the local jail. Accounts conflict on exactly what happened there, but apparently she became uncooperative—letting her body go limp—and the police had to carry her to an isolation cell. The police say they gently placed her on the floor of the cell, at which point Rawlins kicked the shins of the closest officer three times. Rawlins says the police essentially slammed her into the wall and floor of the cell and started assaulting her, and she kicked out instinctively to protect herself.

Rawlins was charged with battery of a police officer and the case went to a jury trial. Rawlins claims her trial counsel refused to proffer photographs showing the bruises and cuts she allegedly obtained from the police. Also, the

judge denied a self-defense jury instruction because her testimony (at that time) was that she did not kick anyone, and if she did it was involuntary. The jury convicted.

Rawlins received a 12-month suspended sentence and 3 years' probation. She timely appealed, but for unexplained reasons it took the Kansas Court of Appeals until March 2003 to resolve the appeal, at which point the court affirmed.[1] The Kansas Supreme Court denied review a few months later.

Rawlins then timely sought state post-conviction review. This petition worked its way slowly through the Kansas judicial system which finally denied all relief in January 2011[2]—long after Rawlins finished her probation.

Given that she was no longer "in custody," Rawlins could not bring a § 2254 petition in federal court. *See* 28 U.S.C. § 2254(a) (making writ of habeas corpus available to prisoners "in custody pursuant to the judgment of a State court"); *Maleng v. Cook*, 490 U.S. 488, 492 (1989) (per curiam) ("While we have very liberally construed the 'in custody' requirement for purposes of federal habeas, we have never extended it to the situation where a habeas petitioner suffers no present restraint from a conviction."). The fact that she still suffers

---

[1] *See State v. Rawlins*, 66 P.3d 261 (Kan. Ct. App. 2003) (table), *review denied*, June 26, 2003.

[2] *See Rawlins v. State*, 182 P.3d 1271 (Kan. Ct. App. 2008); *Rawlins v. State*, No. 103,389, 2010 WL 4393963 (Kan. Ct. App. Oct. 29, 2010) (per curiam), *review denied*, Jan. 18 2011.

certain (unexplained) disabilities by reason of her conviction does not change this rule. *See id.* ("[O]nce the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it.").

Rawlins sought to avoid this problem in district court by applying for a writ of audita querela or in the alternative coram vobis. Apart from the unusual procedural posture, her application is effectively a § 2254 petition, arguing that her constitutional rights were violated through ineffective assistance (her lawyer's failure to introduce the photographs) and the judge's refusal to give a self-defense instruction.

The district court was not certain whether audita querela is available but assumed that it was, further assumed that § 2254 standards would apply, and addressed the application on its merits. The court concluded that Rawlins had not established a constitutional defect in her trial and dismissed her petition. The court did not address coram vobis.

## II. Analysis

On appeal, both Rawlins and Kansas move quickly past the question of whether audita querela or coram vobis is appropriate and instead direct most of their arguments to the merits of Rawlins's claims as if brought as a § 2254 petition. Our review of the writs of audita querela and coram vobis, however,

convinces us that the procedural posture is dispositive. As explained below, coram vobis (or nobis) is the most analogous writ, but a petitioner cannot move for it in federal court to review a state conviction. We accordingly do not reach the merits of Rawlins's constitutional arguments.

### A. *Audita Querela*

Audita querela is an ancient common law writ, which translated means "the complaint having been heard." *Black's Law Dictionary* 150 (9th ed. 2009). According to Blackstone, audita querela originally issued following actions for debt

> where a defendant, against whom judgment [was] recovered, and who [was] therefore in danger of execution [on that judgment], or perhaps actually in execution, may be relieved upon good matter of discharge, which has happened since the judgment: [such as situations in which] the plaintiff hath given [the judgment debtor] a general release; or if the [judgment debtor] hath paid the debt to the plaintiff, without procuring the satisfaction to be entered on the record.

3 William Blackstone, *Commentaries* *405–06. The writ was eventually extended to "like cases" where post-judgment circumstances provided the defendant "good matter to plead." *Id.* at *406. The upshot was that some unanticipated circumstance arising post-judgment made continuing enforcement of the judgment unfair. "It would be contrary to justice," according to common law practice, for a judgment to be enforced "because of matters arising subsequent to the rendition thereof, or because of prior existing defenses which were not available to the

judgment debtor in the original suit, by reason of the judgment creditor's fraudulent conduct, or through circumstances over which the judgment debtor had no control."  *See* 2 *Ruling Case Law* 1159 (William M. McKinney & Burdett A. Rich eds., 1914).

The writ has been applied in federal court actions.  In 1946, for example, we described audita querela as the historical basis for a court's inherent power to "afford relief in behalf of one against whom execution had been issued or was about to be issued upon a judgment, which it would be contrary to justice to allow to be enforced, because of matters arising subsequent to the rendition thereof." *Oliver v. City of Shattuck ex rel. Versluis*, 157 F.2d 150, 153 (10th Cir. 1946); *cf. United States v. Torres*, 282 F.3d 1241, 1245 n.6 (10th Cir. 2002) ("a writ of audita querela is used to challenge a judgment that was correct at the time rendered but which is rendered infirm by matters which arise after its rendition" (internal quotation marks omitted)).

Federal Rule of Civil Procedure 60(e) abolished the writ of audita querela in federal civil actions soon after we handed down our *Oliver* decision.[3]  Audita querela still receives attention, however, in the immigration context.  Immigrants facing deportation on account of their criminal convictions have on occasion attempted to use audita querela to argue that deportation would be an unduly

---

[3] What is now Rule 60(e) began as part of Rule 60(b).  *See* Fed. R. Civ. P. 60, Committee Note to 1946 Amendment.

harsh consequence in light of mitigating circumstances. *See Ejelonu v. INS*, 355

F.3d 539 (6th Cir. 2004), *vacated and reh'g en banc granted* (July 27, 2004),

*appeal dismissed* (Oct. 18, 2004); *Doe v. INS*, 120 F.3d 200 (9th Cir. 1997);

*United States v. LaPlante*, 57 F.3d 252 (2d Cir. 1995); *United States v. Johnson*,

962 F.2d 579 (7th Cir. 1992); *United States v. Reyes*, 945 F.2d 862 (5th Cir.

1991); *United States v. Holder*, 936 F.2d 1 (1st Cir. 1991); *United States v. Ayala*,

894 F.2d 425, 428 (D.C. Cir. 1990).

With the exception of the Sixth Circuit's since-vacated *Ejelonu* decision,

each of these immigration cases concludes that audita querela, if available, must

be brought on "legal" rather than "equitable" grounds. In other words, the

petitioner must show something like an intervening change in law, *see Ayala*, 894

F.2d at 429, rather than simply argue that the collateral consequences of the

conviction have turned out to be unduly harsh.

With this background, we turn to the other writ at issue here, coram nobis.

### B. Coram Nobis and Coram Vobis

#### 1. History

Under the common law of England, certain requirements were deemed so

essential to the "validity and regularity of the legal proceeding" that a party could

allege their absence "however late discovered"—even after final judgment.

Henry John Stephen, *A Treatise on the Principles of Pleading in Civil Actions* 140

(London, Joseph Butterworth & Son 1824) (emphases removed). In the civil

context, this included situations where, for example, no one recognized that the defendant was a minor (and should have appeared by guardian rather than attorney) or that the plaintiff or defendant was a married woman (and therefore should have appeared by next friend). *Id.* In the criminal context, this included situations where "if unknown the defendant was insane at trial, or if being in danger and trepidation from a mob he pleaded guilty and was sentenced to prison to save his life, or if being under eighteen he was sentenced to a punishment permissible only against an older person." 2 Joel Prentiss Bishop, *New Criminal Procedure* § 1369, at 1181–82 (H. C. Underhill ed., 2d ed. 1913).

Upon realizing that these or similar facts existed before judgment, a party could sue out a writ of coram nobis or coram vobis, depending on the court that handed down the judgment.

If the King's Bench handed down the judgment, the proper writ was coram nobis, which means "before us." *Black's Law Dictionary* 388 (9th ed. 2009). The "before" in "before us" referred to the fact that the record on which the judgment would be reviewed was the same record generated by and remaining in the files of the King's Bench—as opposed to a record that had been transferred to or from some other court. The "us" is the object equivalent of the "royal we" and referred to the fact that the Chancery (which issued the writ),[4] and the King's Bench (to

---

[4] *See* Stephen, *Principles of Pleading*, at 138–39 (noting that, just like original writs, writs of error were sued out of Chancery, including coram nobis).

whom the writ was directed) were both considered stand-ins for the king and his personal dispensation of justice. *See* 1 W. S. Holdsworth, *A History of English Law* 207 (3d ed. 1922) (discussing the fiction of the king's presence in the King's Bench); *id.* at 37–38, 396–97 (discussing the role of Chancery as keeper of the Great Seal that converted writs into the command of the king himself). Coram nobis was therefore shorthand for "review of the record before us, the king." *See* 2 William Tidd, *The Practice of the Courts of King's Bench and Common Pleas* 1191 (London, J. Butterworth & Son 8th ed. 1824) (*Tidd's Practice*) (explaining that coram nobis is "so called, from its being founded on the record and process, which are stated in the writ to remain in the court of the lord the king, before the king himself").

On the other hand, if another court handed down the judgment, such as the Court of Common Pleas, the appropriate writ was coram vobis, "before you." *Black's Law Dictionary* 388. The issuer of the writ remained the same (the Chancery) but the recipient had now changed to a court that was not considered a stand-in for the king—hence the change from "us" to "you." "Before," however, still referred to a record generated by and remaining in the files of the recipient court. Thus, "before you" was shorthand for "review of the record before you, the judges." *See* 2 *Tidd's Practice* 1191 ("In the Common Pleas, the record and process being stated to remain before the king's justices [as opposed to the king himself], the writ is called a writ of error *coram vobis* . . . .").

United States jurisdictions, of course, do not have a monarch and therefore do not divide their courts into categories equivalent to the King's Bench and Common Pleas. Accordingly, American courts entertaining petitions in the nature of coram nobis or coram vobis have "indiscriminately" invoked both labels. 2 *Ruling Case Law* 305.

Rawlins has requested a writ of "coram vobis" (in the alternative to audita querela). But to maintain consistency with the Supreme Court's teachings in *United States v. Morgan*, 346 U.S. 502 (1954), we will refer to the writ as "coram nobis" for the remainder of this opinion.

### 2. **Morgan** *and the Revival of Coram Nobis in Federal Criminal Settings*

Like audita querela, Federal Rule of Civil Procedure 60(e) eliminated coram nobis in federal civil actions. Surprisingly, on the strength of *United States v. Morgan*, however, it still applies in limited circumstances in the criminal context.

Robert Morgan pleaded guilty in 1939 to certain federal crimes and served a four-year sentence. In 1950, he was convicted by a state court on a state charge and received a second-offense sentence enhancement based on his earlier federal conviction. 346 U.S. at 503–04.

Morgan then sought to challenge his federal conviction, arguing that he had not been advised of or had a chance to waive his right to counsel before pleading

guilty to the federal charge, in violation of the Sixth Amendment as interpreted by *Johnson v. Zerbst*, 304 U.S. 458 (1938). The Supreme Court there declared: "If the accused . . . is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty." *Id.* at 468.

Having fully completed his federal sentence, Morgan was no longer "in custody" for purposes of the federal habeas statute, 28 U.S.C. § 2255, and therefore could not raise his Sixth Amendment argument that way. He instead sought a writ of coram nobis from the federal court that handed down his federal sentence.

The government countered that § 2255 had codified the writ of coram nobis and restricted it to persons still "in custody." *Morgan*, 346 U.S. at 510–11. The Supreme Court disagreed, holding that the All Writs Act "comprehend[s] the power for the District Court to take cognizance of this motion in the nature of a coram nobis." *Id.* at 507. The relevant portion of the All Writs Act provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

Nonetheless, the Supreme Court in *Morgan* characterized coram nobis as an "extraordinary remedy" to be invoked "only under circumstances compelling such

-12-

action to achieve justice." *Morgan*, 346 U.S. at 511. The Court also suggested that the error should be "of the most fundamental character." *Id*. at 512 (internal quotation marks omitted). The Court concluded that violating the rule of *Johnson v. Zerbst* was just such a "fundamental" error,[5] and that "sound reasons exist[ed] for failure to seek appropriate earlier relief," although it did not specify those reasons. *Id*. The Court then remanded with orders to grant the writ and hold a hearing regarding whether the petitioner waived his right to counsel. *Id*.

In sum, where a federal convict cannot bring a § 2255 petition because he or she is no longer in federal custody, *Morgan* permits federal courts to entertain coram nobis applications in "extraordinary cases presenting circumstances compelling its use to achieve justice." *United States v. Denedo*, 556 U.S. 904, 911 (2009); *see also Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989) ("the burden is on the [coram nobis] petitioner to demonstrate that the asserted error is jurisdictional or constitutional and results in a complete miscarriage of justice").

---

[5] *Morgan* nowhere explained why violating *Johnson v. Zerbst* was a "fundamental" error warranting "extraordinary" coram nobis relief. But to the extent the Court had in mind *Johnson v. Zerbst*'s declaration that the Sixth Amendment created a "jurisdictional bar" to convictions obtained without counsel or proper waiver, 304 U.S. at 468, *Morgan* fits easily within coram nobis's traditional role—inquiring into judgments the court may have had no power to make.

### C. Rawlins Seeks a Writ of Coram Nobis

Rawlins and the district court were both unclear about whether she needed a writ of audita querela or coram nobis. Both assumed that audita querela, if available, was the appropriate writ. This is incorrect.

As noted, audita querela addresses unanticipated situations that arise after judgment. Coram nobis, however, addresses defects that existed before the judgment, and *Morgan* makes clear that such defects include those that would otherwise be raised in habeas proceedings but for the petitioner no longer being in custody.

That is Rawlins's situation. She challenges her conviction based on alleged constitutional defects that would normally be raised through a § 2254 petition, namely, failure to receive a self-defense jury instruction, and ineffective assistance of counsel. Accordingly, the remainder of this analysis focuses on the propriety of coram nobis.

### D. Federal Courts May Not Review State Court Judgments Through Coram Nobis

Unfortunately for Rawlins, "[i]t has long been settled in this circuit that federal courts have no jurisdiction to issue writs of coram nobis with respect to state criminal judgments." *Davis v. Roberts*, 425 F.3d 830, 836 (10th Cir. 2005) (citing *Rivenburgh v. Utah*, 299 F.2d 842, 843 (10th Cir. 1962) ("the use of [coram nobis] is limited by tradition and rule and cannot be used . . . as a

collateral writ of error between state and federal jurisdictions")); *accord Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir. 2003); *Lowery v. McCaughtry*, 954 F.2d 422, 423 (7th Cir. 1992); *Sinclair v. Louisiana*, 679 F.2d 513, 514 (5th Cir. 1982); *Thomas v. Cunningham*, 335 F.2d 67, 69 (4th Cir. 1964).

This outcome is required by the All Writs Act, which states that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "In determining what auxiliary writs are 'agreeable to the usages and principles of law,' we look first to the common law," *United States v. Hayman*, 342 U.S. 205, 221 n.35, (1952), and *Morgan* itself took pains to point out that coram nobis had been used in American courts "always with reference to its common-law scope," *Morgan*, 346 U.S. at 508.

As already noted, the common law scope of coram nobis was a writ from the judgment-issuing court to itself, granting itself power to reopen that judgment. It is not a writ that one court may issue to another. *Cf. id*. at 505 n.4 ("a motion [for a writ of coram nobis] is a step in the criminal case and not, like habeas corpus where relief is sought in a separate case and record, the beginning of a separate civil proceeding"). Indeed, our circuit and others have taken this aspect of the writ so seriously that we enforce it even when a petitioner seeks to reopen a federal judgment. Such a petitioner must move for the writ in the sentencing court, rather than any convenient federal court. *See Carter v. Attorney Gen. of*

*United States*, 782 F.2d 138, 141 (10th Cir. 1986); *accord United States v. Sandles*, 469 F.3d 508, 517 (6th Cir. 2006); *Mustain v. Pearson*, 592 F.2d 1018, 1021 (8th Cir. 1979); *Grene v. United States*, 448 F.2d 720, 721 (5th Cir. 1971) (per curiam); *Sanchez Tapia v. United States*, 338 F.2d 416, 416 (2d Cir. 1964).

Because the District of Kansas did not pronounce the judgment against Rawlins, it has no power to reexamine her conviction through a writ of coram nobis. Nor would any federal court have such power in these circumstances. We thus have no power to consider Rawlins's constitutional complaints.

## III. Conclusion

For the foregoing reasons, the judgment of the district court is VACATED and this case is REMANDED to the District of Kansas with instructions to dismiss for lack of jurisdiction.