[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-14802
Non-Argument Calendar
_____

D.C. Docket No. 6:14-cr-00005-PGB-GJK-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VALENTINE OKONKWO,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 17, 2017)

Before WILLIAM PRYOR, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

Valentine Okonkwo appeals his convictions for conspiring to distribute and for distributing oxycodone. 21 U.S.C. §§ 846, 841(a)(1), 841 (b)(1)(C). Okonkwo challenges the admission of testimony from an investigator about Okonkwo's internet pharmacy business; the denial of his request for an instruction on Federal Rule of Evidence 404(b); and the sufficiency of the evidence for his conviction for distributing oxycodone to Ivette Desantiago. We affirm.

Even if we were to assume that the district court erred by admitting testimony from an investigator that Okonkwo falsely denied filling prescriptions submitted over the internet, that error was harmless in the light of the overwhelming evidence of Okonkwo's guilt. *See United States v. Phaknikone*, 605 F.3d 1099, 1109 (11th Cir. 2010). The government presented evidence that Okonkwo, a licensed pharmacist, conspired to distribute and distributed oxycodone by filling prescriptions with knowledge that they had been fabricated or "that a physician [had] issued the prescription without a legitimate medical purpose or outside the usual course of professional practice." *See United States v. Joseph*, 709 F.3d 1082, 1094 (11th Cir. 2013).

Several witnesses testified that Okonkwo honored fraudulent prescriptions. When Emily Bird presented to Okonkwo prescriptions that she had altered by changing the drug or quantity of oxycodone prescribed, Okonkwo told her to "do a better job." Bird remained a regular customer, even though Okonkwo charged her

2

high prices, because he never called the physician listed on the prescription and did not always require Bird to produce identification. Tessa Lynn Francavilla filled counterfeit prescriptions for oxycodone routinely at Okonkwo's pharmacy, and when she was escorted by her forger, Neil Calegari, Okonkwo asked Francavilla why she had "to do that" and forbade her from bringing Calegari to the pharmacy again. Jennifer Kennedy and Robyn Jones paid Okonkwo cash to fill prescriptions of oxycodone for groups of straw purchasers that the two women transported to the pharmacy, and Kathleen Cabrera, who owned a salon in the area, noticed that carloads of customers visited Okonkwo's pharmacy.

Okonkwo's computer records revealed that he dispensed predominately oxycodone, was paid in cash, and filled prescriptions written by doctors whose practices were far away and whose patients were from out of state. A jury readily could infer from Okonkwo's odd transactions and his remarks to customers that he knew the prescriptions he filled were fraudulent and did not serve a legitimate medical purpose. *See United States v. Steele*, 178 F.3d 1230, 1236 (11th Cir. 1999). In the light of the evidence against Okonkwo, we cannot say that the investigator's testimony had a substantial or injurious effect or influence on the jury. *See Phaknikone*, 605 F.3d at 1109.

The district court did not abuse its discretion when it refused to give the pattern jury instruction for Federal Rule of Evidence 404(b) and instead gave

3

precise instructions that "substantially covered" Okonkwo's defense theory. A "refusal to give a proffered instruction only constitutes reversible error if: (1) the requested instruction was a correct statement of the law, (2) its subject matter was not substantially covered by other instructions, and (3) its subject matter dealt with an issue . . . that was so important that failure to give it seriously impaired the defendant's ability to defend himself." *United States v. Dean*, 487 F.3d 840, 847 (11th Cir. 2007) (internal quotation marks and citation omitted). To ensure that the jury considered the evidence about Okonkwo's internet pharmacy to determine his knowledge and absence of mistake, *see* Fed. R. Evid. 404(b)(2), the district court informed the jury that "this case is not about pharmaceutical malpractice or negligence, none of which constitute a crime" and instructed the jury that it had to find Okonkwo "knowingly fill[ed] prescriptions for a controlled substance outside the usual course of pharmaceutical practice or for other than legitimate medical purposes." The district court also gave an instruction consistent with Okonkwo's closing arguments that he "was an incompetent pharmacist but not a criminal pharmacist" and "he [did not] recognize[] there were red flags" revealing that the prescriptions for oxycodone were counterfeit or did not serve a legitimate medical purpose. The district court reiterated that "Okonkwo's position [is] that . . . [his] distributions and dispensations were a result of mistake, negligence and incompetence on his part," and it instructed the jury to find Okonkwo "not guilty"

4

if they found that he "did not knowingly and intentionally disobey or disregard the law." Okonkwo cannot establish that the failure to give the pattern jury instruction for Rule 404(b) "seriously impaired [his] ability to defend himself." *See Dean*, 487 F.3d at 847.

Ample evidence supported Okonkwo's conviction for distributing oxycodone to Desantiago. Desantiago submitted to Okonkwo a prescription forged by Gerald Murray that was of such poor quality that, in the words of Officer Deana Dipaola of the Altamonte Springs Police Department, it "looked totally different" and "stuck out . . . as you touched or felt [it]." Desantiago used a prescription that Murray had designed on his computer using a template, which he had printed on stock paper used for resumes and cut out using scissors. Murray testified that he had been unconcerned about the quality of the document because he had been told that "the pharmacist was well aware that they were fake prescriptions." A jury reasonably could find that Okonkwo knew Desantiago's prescription was counterfeit based on its appearance. *See Steele*, 178 F.3d at 1236.

We **AFFIRM** Okonkwo's convictions.