[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13104
Non-Argument Calendar

_____

D.C. Docket No. 6:19-cv-00638-PGB-GJK

VALENTINE OKONKWO,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

No. 20-13552
Non-Argument Calendar

_____

D.C. Docket No. 6:14-cr-00005-PGB-GJK-1

UNITED STATES OF AMERICA,

                                                    Plaintiff-Appellee,


versus


VALENTINE OKONKWO,

                                                    Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(August 24, 2021)

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR and LUCK, Circuit Judges.

PER CURIAM:

Valentine Okonkwo, a federal prisoner, appeals the denial of his motion to vacate, 28 U.S.C. § 2255, and petition for a writ of *audita querela*. We issued a certificate of appealability to address whether trial counsel was ineffective for failing to object to the amount of oxycodone attributed to Okonkwo for conspiring to distribute and for distributing that drug illegally. We consolidated that appeal with Okonkwo's challenge to the denial of his petition for a writ of *audita querela* to vacate his forfeiture monetary judgment. Because counsel had no obligation to object to Okonkwo being held responsible for all the oxycodone distributed from

2

his pharmacy and the writ of *audita querela* was unavailable for him to challenge purported errors that preceded the entry of his forfeiture judgment, we affirm.

## I. BACKGROUND

In January 2015, a grand jury returned an amended indictment that charged Okonkwo with conspiring to possess with intent to distribute and ten counts of distributing oxycodone to specific customers outside the usual course of professional practice and for other than a legitimate medical purpose. 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(C). The indictment also sought forfeiture of Okonkwo's pharmaceutical licenses and "a money judgment in the amount of at least $555,000, representing the amount of proceeds [he] obtained . . . from the conspiracy" to distribute oxycodone between December 2009 and October 2012. *Id.* § 853. Later, the government filed a notice requesting the district court enter a forfeiture monetary judgment against Okonkwo.

Business records and testimony from customers, employees, an owner of an adjacent business, and an expert proved that Okonkwo filled forged, altered, and duplicative prescriptions for oxycodone at his Orlando business, Avalon Park Pharmacy. Emily Bird, an oxycodone addict, testified that Okonkwo filled prescriptions without verification in return for cash payments and advised her to obtain prescriptions of better quality. Three Avalon employees who processed internet and mail-order prescriptions testified that customers often appeared to be

3

drug addicts and some would lose consciousness at the pharmacy. The owner of a nearby salon observed carloads of customers arrive at Avalon, where they waited outside for hours and become rowdy and intoxicated. A professor of pharmacy practice identified multiple "red flags" in prescriptions Avalon filled, including prescriptions written and submitted on one day for multiple patients by a single doctor and prescriptions dated long before being filled. Business records established that Avalon purchased more oxycodone between 2009 and 2012 than any pharmacy chain store in the area.

Agents of the Drug Enforcement Agency also testified about Avalon's profits and Okonkwo's wrongdoing. Agent Paul Short discovered that many prescriptions Avalon filled were written by doctors whose offices were more than 100 miles away, that 74 percent of its transactions involved oxycodone, and that 99 percent of its customers paid with cash, which resulted in proceeds of more than $1.2 million between 2009 and 2012. The agent also learned that Avalon dispensed 563,000 oxycodone tablets between December 2009 and April 2012, which far exceeded the average distribution rate by pharmacies of 72,000 tablets a year and that Okonkwo filled 605 prescriptions and dispensed 120,829 oxycodone tablets. Agent Barbara Boggess discovered that, between 2009 and 2013, Okonkwo underreported to drug distributors the amount of Oxycodone that Avalon sold, cash payments it received, and sales it made to remote customers and that he

misrepresented that Avalon verified prescriptions with physicians and reported fraudulent prescriptions to law enforcement. Agent Deana Diapola testified that she and other agents observed Okonkwo falsely mark forged prescriptions as being verified with issuing physicians.

During trial, the parties disputed the process for obtaining a forfeiture monetary judgment. The prosecutor argued that Federal Rule of Criminal Procedure 32.2(b)(1) and *United States v. Curbelo*, 726 F.3d 1260 (11th Cir. 2013), dictated that the district court should determine the amount Okonkwo had to pay. Defense counsel argued that the determination of the amount rested with the jury.

The jury found Okonkwo guilty of one count of conspiring to distribute and ten counts of distributing oxycodone without a legitimate medical purpose. The jury also returned a special verdict finding that Okonkwo used his professional licenses to commit his crimes. The district court ordered Okonkwo to forfeit his licenses. Later, the district court granted the motion of the government for a forfeiture monetary judgment against Okonkwo of $555,000.

Okonkwo's presentence investigation report provided a base offense level of 38 for distributing more than 15 kilograms of oxycodone between December 2009 and April 2012 by dispensing 491,706 30-milligram tablets and 65,217 15-milligram tablets, which equated to 105,387 kilograms of marijuana. United States

5

Sentencing Guidelines Manual § 2D1.1(c)(1) (Nov. 2015). The presentence report added two levels for Okonkwo's use of a special skill, *id.* § 3B1.3, which resulted in a total offense level of 40. With a criminal history category of I, Okonkwo's presentence report provided an advisory sentencing range of 292 to 365 months of imprisonment. The report stated that Okonkwo was unable to pay a fine due to "pending forfeitures" and other financial obligations.

Okonkwo objected to the use of a 1:6700 ratio of oxycodone to marijuana and argued that the district court should apply a 1:500 ratio, which would result in a base offense level of 32, but the district court overruled his objection. The district court ruled that, despite counsel's "cogent point" about the equivalency ratio, the sentencing guidelines did not overrepresent the seriousness of Okonkwo's offense because "oxycodone carrie[d] distinct risks, unlike heroin, due to its legitimate medical use and accessibility" and Okonkwo's ability to "sell it in plain view of the public with a sense of security."

The district court recounted the evidence against Okonkwo and sentenced him to 292 months of imprisonment. The district court reminded Okonkwo that it had addressed the "matter of forfeiture . . . [in] a [preliminary] order . . . [and] a final order." The prosecutor interjected that the orders referenced did not pertain to Okonkwo's "license . . . [being] forfeited by the jury at trial." Okonkwo appealed

and challenged his convictions, which we affirmed. *United States v. Okonkwo*, 702 F. App'x 866 (11th Cir. 2017).

While Okonkwo's appeal was pending, he moved *pro se* to reduce the forfeiture monetary judgment from $555,000 to $10,000. Okonkwo argued that appellate counsel told him about the judgment and that it should have equaled the proceeds of his unlawful transactions with the ten customers identified in his indictment. The government responded that Okonkwo received notice of the personal money judgment during his trial and at sentencing, that he failed timely to challenge the judgment, and that it was correctly based on the proceeds of the conspiracy. The district court denied Okonkwo's motion.

Okonkwo later moved to vacate his sentence. 28 U.S.C. § 2255. He argued that his trial counsel was ineffective for failing to object to the calculation of his base offense level based on the 556,923 oxycodone tablets dispensed from Avalon and should have asked the district court to determine his offense level based on the 120,829 oxycodone tablets that he dispensed. The district court denied Okonkwo's motion to vacate.

Okonkwo also petitioned *pro se* for a writ of *audita querela*. He argued that his trial counsel failed to notify him of the personal money judgment and then disregarded his instructions to challenge the judgment on direct appeal. He also argued that the district court erred by basing the judgment on gross proceeds

instead of net proceeds of Avalon and by treating funds in business bank accounts as substitute assets.

The district court denied Okonkwo's petition. The district court ruled that Okonkwo "was well-aware of the forfeiture judgment" and "the writ of audita querela [did] not apply" because he could have "appealed [the personal money judgment] to the Eleventh Circuit and chose not to."

## II. STANDARD OF REVIEW

On denial of a motion to vacate a sentence, we review findings of fact for clear error and the application of law to those facts *de novo*. *Dell v. United States*, 710 F.3d 1267, 1272 (11th Cir. 2013). We also review "*de novo* the question of whether a prisoner may challenge his sentence by filing a motion for a writ of *audita querela*." *United States v. Holt*, 417 F.3d 1172, 1174 (11th Cir. 2005).

## III. DISCUSSION

We divide our discussion in two parts. We first address Okonkwo's argument that trial counsel was ineffective for failing to challenge the amount of oxycodone tablets used to determine his base offense level. We next address his request for an extraordinary writ to set aside his forfeiture monetary judgment.

*A. The District Court Did Not Err by Denying Okonkwo's Motion to Vacate.*

To prevail on a claim of ineffective assistance of counsel, a movant must satisfy a two-part standard. *See Strickland v. Washington*, 466 U.S. 668, 688, 694

(1984). The movant must first prove "that counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment" and that counsel's error was "so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Id.* at 687. "Surmounting *Strickland*'s high bar is never an easy task." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). Counsel enjoys a "strong presumption" that his performance was reasonable and that his strategic decisions represented "the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689–90. Counsel is ineffective only if his performance falls "outside the wide range of professionally competent assistance." *Id.* at 690.

To determine a defendant's base offense level for a drug offense, the district court must consider both the amount of the substance alleged in his indictment and any amount that is part of his relevant conduct. When "the offense involved both a substantive drug offense and a[] . . . conspiracy. . . , the total quantity involved [must] be aggregated to determine the scale of the offense." U.S.S.G. § 2D1.1 cmt. n.5. "Where there is no drug seizure . . ., the [district] court [is required to] approximate the quantity of the controlled substance." *Id.*

The district court did not err by rejecting Okonkwo's argument that his counsel performed deficiently by failing to object to the amount of drugs attributed to him. Okonkwo was responsible for unlawfully distributing tablets of oxycodone

9

he dispensed by filling hundreds of prescriptions that he knew were fraudulent or that he knew were written by a physician for no legitimate medical purpose. *See United States v. Iriele*, 977 F.3d 1155, 1169 (11th Cir. 2020). He also was responsible for the unlawful sales of oxycodone by his pharmacy, which he attempted to conceal from drug distributors and government agencies. *See* U.S.S.G. § 1B1.3 (defining relevant conduct as encompassing acts that the defendant aids and abets and that are foreseeable to him in "jointly undertaken criminal activity"). The district court reasonably approximated the amount of oxycodone Okonkwo distributed by holding him responsible for the 491,706 30-milligram tablets and 65,217 15-milligram tablets dispensed by his pharmacy. So defense counsel had no viable ground to object to the amount of oxycodone attributed to Okonkwo. And because counsel cannot be ineffective for "failing to recognize . . . [or] to preserve a meritless issue," *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992), Okonkwo was not entitled to postconviction relief. The district court did not err by denying Okonkwo's motion to vacate.

*B. The District Court Also Did Not Err by Denying Okonkwo's Petition for a Writ of* Audita Querela*.*

*Audita querela* is an ancient, common law writ that allows a defendant to attack the enforcement of a judgment after it is rendered. *Holt*, 417 F.3d at 1174. The writ is used only to raise a defense or remedy an error that has "arisen after judgment." *Leggett v. Humphreys*, 62 U.S. 66, 71 (1858); *see Rawlins v. Kansas*,

10

714 F.3d 1189, 1196 (10th Cir. 2013) ("[A]udita querela addresses unanticipated situations that arise after judgment."); *United States v. Miller*, 599 F.3d 484, 489 (5th Cir. 2010) ("*Audita querela* is only available where the judgment of the district court was correct at the time it was rendered, but is undermined by facts that later come to light."); *United States v. Reyes*, 945 F.2d 862, 866 (5th Cir. 1991) (citing *United States v. Holder*, 936 F.2d 1 (1st Cir. 1991), and *United States v. Ayala*, 894 F.2d 425 (D.C. Cir. 1990), for the proposition that the writ of *audita querela* is available based on a legal objection that "arisen subsequent to that conviction"). *Audita querela*, like *coram nobis*, is an "extraordinary remedy" that is available "only under circumstances compelling such action to achieve justice" to correct "errors of the most fundamental character." *United States v. Morgan*, 346 U.S. 502, 511–12 (1954).

The writ of *audita querela* is not available to address the contemporaneous errors alleged by Okonkwo. Okonkwo alleged that his defense counsel failed to inform him that the government sought a personal money judgment against him or to give him a copy of that judgment and that the district court miscalculated the amount he had to pay and misclassified the funds in business bank accounts as substitute assets. Because all these events occurred *before* entry of the forfeiture money judgment, the remedy of *audita querela* is unavailable to correct any error. The district court correctly denied Okonkwo's petition for extraordinary relief.

## IV. CONCLUSION

We **AFFIRM** the denial of Okonkwo's motion to vacate and petition for a writ of *audita querela*.